FORT DEARBORN NATIONAL BANK v. FRANK A. SEYMOUR and
Another.

December 22, 1898.

Nos. 11,289—(156).

**Bank—Pledge of Credit—Former Opinion Followed.**
Former opinion, in 71 Minn. 81, adhered to.

**Fraud of Plaintiff Injurious to St. Paul Bank.**
On the additional or different facts appearing on the second trial, *held*, the fraud of plaintiff injured the St. Paul Bank, although the latter honored the check drawn by the land company in favor of the Stillwater Bank, before plaintiff discounted the new note of the Land Company.

**Discount of Note—Finding of Court Sustained by Evidence.**
*Held*, further, the trial court was warranted in finding that the St. Paul Bank did not first discount the note, and then rediscount it with plaintiff, although, before the cashier of the St. Paul Bank sent the note to plaintiff, he entered the amount of the same on the books of his bank as a credit to the Land Company, and prematurely, and without right to do so, charged the same amount to plaintiff.

**Same—Fraud of Cashier of St. Paul Bank not Ratified—Negligence.**

> *Held*, further, conceding without deciding, that, if plaintiff had acted innocently, the evidence would be sufficient to show conclusively that the St. Paul Bank ratified the transaction of its cashier with plaintiff, yet, as the latter acted fraudulently, the St. Paul Bank has not ratified the transaction, even though its officers and stockholders were negligent in failing to discover the real character of the transaction, which plaintiff intended to conceal from them.

Action in the district court for Ramsey county to recover $5,-808.59. After the decision upon the former appeal herein, 71 Minn. 81, the cause was tried before Bunn, J., who ordered judgment for defendants in the sum of $435.36, being the amount of the insolvent bank's deposit with plaintiff, less the sum of $29,116.16 due to plaintiff from the insolvent bank, and less the sum of $5,808.59, the proceeds of collections made by defendants. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Morphy, Ewing & Gilbert* and *Flower, Smith & Musgrave,* for appellant.

*Young & Lightner,* for respondents.

CANTY, J.

This is the second appeal in this action. On the first trial the court found for the plaintiff bank, and we held that the evidence would not sustain a judgment in its favor. For a statement of the facts appearing by the evidence on that trial, see opinion on former appeal, 71 Minn. 81, 73 N. W. 724. On the second trial the court found for defendants, and plaintiff appeals from an order denying a new trial.

Appellant contends that the evidence will not sustain a judgment for defendants.

On the second trial the evidence was in some respects materially different from what it was on the first trial. And in discussing the evidence given on the second trial it must be remembered that the question now is, not whether that evidence would sustain a judgment for plaintiff, but whether it will sustain a judgment for defendants. It may be that this evidence would sustain a judgment for either party, and that the finding of the trial court for the defendants should be sustained. It was fairly to be implied from the

evidence on the first trial that the check given by the Gladstone Land Company in payment of its note to the Stillwater Bank was not paid by the Bank of Minnesota until after the arrangements were made by William Dawson, Jr., with plaintiff to take the new note of the Land Company, and that the Bank of Minnesota then paid the check on the faith of these arrangements. But it appears by the evidence on the second trial that this check was paid before any such arrangements were made.

On the afternoon of July 12, 1893, Bronson, the cashier of the Stillwater Bank, appeared in St. Paul after banking hours, and presented the note to Dawson, Jr., as treasurer of the Land Company, for payment. Thereupon Dawson, Jr., as such treasurer, drew a check on the Bank of Minnesota for $25,019.44 in favor of the Stillwater Bank, delivered the check to Bronson, and received from him the notes of the Land Company. Bronson immediately indorsed the check, and handed it back to Dawson, Jr., as cashier of the Bank of Minnesota, to be deposited in that bank to the credit of the Stillwater Bank, as the latter bank kept an account in the former. On the next day the amount of this check was credited to the latter on the books of the former, and the Land Company was charged with the same amount. At the same time Dawson, Jr., drew up the note from the Land Company to the plaintiff, mentioned in the former opinion, had the same signed by the sureties, sent it to plaintiff at Chicago, and then charged the amount thereof to plaintiff on the books of the Bank of Minnesota, and credited the same amount to the Land Company on these books. These things were all done on July 13. The plaintiff received the note of the Land Company on the 14th, and on the same day wrote Dawson, Jr., as cashier of the Bank of Minnesota, the letter set out in the former opinion. Dawson, Jr., received this letter on the 15th.

The trial court found that Dawson, Jr.,

"Acting for himself and for said land company,"

sent the note to plaintiff with a request that plaintiff discount it. This amounts to a finding that he was not acting for the Bank of Minnesota when he thus sent it.

But appellant contends that it conclusively appears from this evidence that the Land Company first discounted the note with the Bank of Minnesota, that the latter then rediscounted it with plaintiff, and that, therefore, the Bank of Minnesota was not, as held in the former opinion, a mere accommodation surety for plaintiff.

We cannot agree with appellant. The letter of Dawson, Jr., to plaintiff stated that he was interested in the Land Company, and did not want to borrow the money from his own bank. This part of the transaction tends to prove that the note had not already been discounted with that bank. True, before the note was sent to plaintiff, the amount of it was entered on the books of the Bank of Minnesota as a credit to the Land Company, but it was at the same time charged to plaintiff, so that the transaction appeared on these books to be, not a discount of the note, but a remittance by plaintiff to the Bank of Minnesota of $25,000 to be placed to the credit of the Land Company.

Appellant also contends that on the foregoing facts it cannot be held that the Bank of Minnesota ever parted with anything on the faith of the arrangements made with plaintiff to discount the note of the Land Company, and that, therefore, whether these arrangements were fraudulent or not as to the Bank of Minnesota, they did not injure that bank, and, if it was not injured by the alleged fraud, plaintiff is entitled to retain the $25,000 placed in the inactive account as the proceeds of the discounted note.

We cannot hold that the Bank of Minnesota was not injured by the secret agreement of Dawson, Jr., whereby, as security for the note of the Land Company, he pledged this $25,000 so placed to the credit of the latter bank in the inactive account carried by it in the plaintiff bank. With respect to the secret and fraudulent part of the agreement between plaintiff and Dawson, Jr., he did not represent the Bank of Minnesota. Again, he acted for both the Land Company and the Bank of Minnesota in assuming to pay the Stillwater Bank out of the overdrawn account of the Land Company in the Bank of Minnesota. That transaction was voidable as to the latter bank if it acted promptly.

The trial court was warranted in finding that it would have acted promptly, and avoided that transaction, or would have compelled

the Land Company to make good the $25,000 so drawn out by the Stillwater Bank, if it were not for the fraud of the plaintiff in making it appear that the $25,000 so drawn out was made good by depositing with the Bank of Minnesota the proceeds of the new note, which plaintiff pretended it had discounted for the Land Company.

By the agreement between plaintiff and Dawson, Jr., it appeared, and was intended to appear, that the Land Company had received $25,000 from plaintiff, that this was to be paid to it by the Bank of Minnesota, and to compensate the latter bank therefor the same sum was placed to its credit in the inactive account in the plaintiff bank. In this way the $25,000 was supposed to be transmitted from plaintiff to the Land Company. This was the statement spread on the books of both banks, and which both Dawson, Jr., and plaintiff intended should be spread on the books of the Bank of Minnesota for the inspection of its stockholders, directors, customers and the bank examiner. True, a thorough search among the papers of the latter bank might have brought to light the correspondence between plaintiff and Dawson, Jr., showing that the $25,000 in the inactive account was pledged for the payment of the note.

But the trial court was fully warranted in finding that it was the intention and expectation of both plaintiff and Dawson, Jr., that this correspondence would not and should not be brought to light; that the Bank of Minnesota should appear to every one except plaintiff and Dawson, Jr., to have a cash reserve of $25,000 which it did not have, and in the Bank of Minnesota the Land Company should appear to have a credit of $25,000 which it did not have.

Plaintiff's agreement with Dawson, Jr., amounted, in effect, to a conspiracy with him, not only to cause these false appearances, but to keep them up for more than three years and five months, until the Land Company and every one connected with it had become insolvent. Then we are of the opinion that the Bank of Minnesota was injured by the fraud.

Appellant claims that it conclusively appears that the Bank of Minnesota ratified the transaction between Dawson, Jr., and plaintiff. It appeared on the second trial that two of the directors of the Bank of Minnesota, who were not interested in the Land Com-

pany, knew for a long time that the $25,000 so placed in the inactive account could not be drawn out of plaintiff's bank, but they did not know why it could not be drawn out. This evidence might have had considerable weight if it were not for the fact that it is very common for a bank to deposit a certain specified amount of its funds in an inactive account in its correspondent bank for a legitimate purpose, usually to secure obligations arising on current transactions.

Appellant contends that said knowledge of the directors, and the correspondence between the banks, taken with the entries made on the books of the Bank of Minnesota during the three years and five months during which the transaction was continued, conclusively proves that the Bank of Minnesota ratified the act of its cashier in pledging the $25,000 as security for the payment of the note of the Land Company.

Conceding, without deciding, that a reasonably careful scrutiny of this correspondence and these entries would have put the latter bank on inquiry so as to make it chargeable with knowledge of the act of its cashier in so pledging these funds, yet, in our opinion, that is not sufficient in this case. If the cashier had acted fraudulently, or beyond his authority, and plaintiff had acted innocently, such evidence of ratification might be conclusive.

But plaintiff did not act innocently. It is very plain from the letter of Dawson, Jr., at the very inception of the transaction between him and plaintiff, that he intended to use the funds of the Bank of Minnesota for the benefit of his private enterprises, without having it so appear on the books of that bank. He proposed to do this indirectly with the aid of plaintiff, and the latter knowingly agreed to aid him, and did so aid him in the scheme. As such practices have become very common, it may be that plaintiff's cashier did not know that he was participating in the commission of a fraud, so as to make his own bank liable; but his ignorance of the law is no excuse. It is fair to presume that he was a business man of sufficient discernment to see that Dawson, Jr., had adopted this roundabout way of loaning the funds of the Bank of Minnesota to the Land Company for the purpose of concealing the real transaction from the other officers of his bank, and that, in order to accom-

plish his purpose, he was willing to loan these funds at 4 per cent. per annum, while the Land Company paid 6 per cent., 2 per cent of which went to plaintiff for the part it played in the scheme. Then plaintiff intended to aid Dawson, Jr., in deceiving his own bank, and should not now complain because the other officers and the stockholders of that bank did not discover what plaintiff intended they should not discover. If plaintiff entered into a scheme to defraud the Bank of Minnesota, it is no defense that such stockholders and other officers were negligent in failing to discover that fraud.

Some of appellant's proposed amended findings of fact which the court below disallowed were findings as to evidentiary matters which were not conclusive, and the others were in conflict with the findings already made, so the court did not err in refusing to find the same.

This disposes of all the questions raised having any merit, and the order appealed from is affirmed.