F. M. BENTALL, Plaintiff and Respondent, v. KOENIG
BROTHERS, INCORPORATED, a Montana Corporation,
Defendant and Appellant.

No. 10331.

Submitted March 13, 1962. Decided June 4, 1962.

372 P.2d 91.

Murphy, Robinson & Keller, Robert S. Keller (argued orally)
Kalispell, for appellant.

Rockwood & Sykes, Robert C. Sykes (argued orally) Kali-
spell, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion
of the Court.

340

■ This is an appeal by the defendant, Koenig Brothers, Inc., from a judgment of the District Court for Flathead County, Montana, in an action brought by the plaintiff, F. M. Bentall, to recover on a promissory note.

The note reads:

"$5,000.00        Kalispell, Montana        July 1, 1958. On Demand After date for value received we Promise to pay to the order of F. M. Bentall Five Thousand and no/100 Dollars In Lawful money of the United States Negotiable and payable at Portland, Oregon with interest before and after Maturity at the rate of 8 per cent, per annum from June 27, 1958, until paid. The makers and endorsers hereby waive presentment, demand, protest and notice thereof; and agree to pay reasonable attorney's fees in case of a suit on this note.

"[Signed]    KOENIG BROTHERS, INCORPORATED
                    "By Arne Poulsen
                                    "President"

The complaint, which is in the ordinary form, declares the note, above-quoted, as the obligation of the defendant corporation and alleges that such note is long past due in that the plaintiff has demanded payment thereof many times but that the defendant corporation "refused, failed, neglected and continues to refuse, fail and neglect to pay the note or any part thereof." The complaint further alleges that as a result of the aforesaid, there was and is now due and owing the plaintiff therefor, from the defendant corporation, the principal sum of $5,000.00, plus interest at the rate of eight per cent per annum from June 27, 1958, plus $674 as attorney's fees, plus all the costs in the cause expended.

The answer admits that the note was executed and delivered to the plaintiff by Arne Poulsen, who was at that time president of the defendant corporation, but alleges that Poulsen had neither power nor authority to make or deliver the same for the corporation or to bind the corporation to the payment

of such obligation; that such act by Poulsen was never ratified or approved by the defendant corporation or by its board of directors; and that the defendant corporation at no time received any consideration from the plaintiff.

The evidence may be summarized as follows:

On July 1, 1958, Alvin F. Koenig and Gerald A. Koenig, owners of 600 of the 601 outstanding shares of stock in the defendant corporation, executed and delivered a written option to one Arne Poulsen whereby Poulsen was given the right to purchase all the shares of stock in the defendant corporation. Under the terms of the agreement, Poulsen, one R. W. Brenneke, and Alvin F. Koenig were given one share of stock each in the defendant corporation and the remaining shares thereof were endorsed by Alvin and Gerald Koenig and placed in escrow. Further, under the terms of the agreement, Poulsen was made president of the defendant corporation and was given the power to exercise *"full management and control of the affairs of said corporation."* (Emphasis supplied.)

In October of 1958, Poulsen surrendered his rights to purchase under the option agreement and the control and the management of the defendant corporation were returned to and once again assumed by Alvin and Gerald Koenig.

The issues in this case revolve around the stock option. The testimony on the preliminaries leading up to the execution of the agreement is as follows:

Arne Poulsen, testifying in behalf of the plaintiff, stated that Alvin and Gerald Koenig agreed to give him an option to purchase their stock in the defendant corporation if he would obtain a "loan" of $20,000 for the defendant corporation; that, though he contacted several possible lenders, he was unable to obtain such sum; that, on June 27, 1958, the plaintiff agreed to loan $10,000—$5,000 to the defendant corporation and $5,000 to him (Poulsen) and one R. W. Brenneke jointly; that the $10,000 was acceptable to Alvin and Gerald Koenig and, on July 1, 1958, the option agreement was exe-

cuted; that a promissory note for $5,000, which is the object of this suit, was prepared on July 1, 1958, and was made payable to the plaintiff and signed by him (Poulsen) as president of the defendant corporation; and that on July 1, 1958, another promissory note from him (Poulsen) and R. W. Brenneke to the plaintiff was prepared and delivered.

The record discloses that the plaintiff gave the $10,000 to Poulsen in the form of three cashier's checks—one for $5,000, one for $4,000, and one for $1,000; that all three checks were made payable to Poulsen; and that Poulsen was to hold such checks until such time as the stock option could be executed.

At the trial, the plaintiff testified that on June 27, 1958, Arne Poulsen came to him for the purpose of obtaining a $10,-000 loan for the defendant corporation; that Poulsen did not at such time represent himself to be the president of the defendant corporation nor was there anything, prior to July 1, 1958, which indicated that Poulsen was president of the defendant corporation; that, on June 27, 1958, he gave Poulsen three cashier's checks totaling $10,000; that such checks, although payable to Poulsen personally, represented a $5,000 loan directly to the defendant corporation and a $5,000 loan to Poulsen and R. W. Brenneke jointly; that the reason why he did not loan the defendant corporation the full $10,000 was ''because of the financial position [of the defendant corporation] that I interpreted from the [financial] report, and I would go the $5,000 for the corporation but I would loan him [Poulsen] $5,000, to him personally, and they [Poulsen and R. W. Brenneke] could then, on their own, loan that to the corporation;'' and that evidence of the indebtedness due him from the defendant corporation is a promissory note dated July 1, 1958, which bears interest from June 27, 1958, and which was signed by Poulsen as president of the defendant corporation.

Gerald A. Koenig, testifying in behalf of the defendant corporation, stated that he and his brother, Alvin, agreed to give Arne Poulsen an option to purchase their stock in the defend-

ant corporation if Poulsen would bring $20,000 "into the corporation;" that when Poulsen was unable to raise such an amount, they agreed to and did in fact accept the sum of $10,000; that they would "not have gone through with the option" if Poulsen had not provided such sum; that such sum was consideration for the option agreement and was not, as Poulsen and the plaintiff contend, a "loan" to the defendant corporation; that, in the event the option was exercised, such sum was to be applied towards the purchase of their stock; and that in the event the option was not exercised, such sum was to be forfeited.

Other evidence relevant to the issues herein shows that R. W. Brenneke, Alvin F. Koenig, and Arne Poulsen were the directors of the defendant corporation at the time of the execution of the note in question; that no regular meeting of the board of directors was held to give formal authorization for the execution of such note; that Alvin F. Koenig and Arne Poulsen decided among themselves, in the absence of Brenneke, that Poulsen would execute the note in question; and that the one and only time Brenneke was present at a board of directors meeting was in August of 1958, a month after the execution of the note.

The only question necessary for this court to determine is whether the district court erred in finding implied authority in Arne Poulsen, as president of the defendant corporation, to execute the promissory note herein sued upon.

It is the defendant corporation's contention that the note in question was executed and delivered by the president, Arne Poulsen, without having been so directed or authorized by any order or resolution of the corporation's board of directors, and hence the authority for the execution and delivery thereof to the plaintiff must rest upon the evidence of the defendant corporation's alleged ratification of those acts by the board of directors or upon such general authority as must be ascribed to the president of the corporation who signed the note.

In the instant case, the defendant corporation's Articles of Incorporation provided for three members to act as directors of the corporation. At the time of the execution of the note in question, R. W. Brenneke, Alvin F. Koenig, and Arne Poulsen were its directors. It is undisputed that Alvin Koenig and Arne Poulsen authorized the execution of the note in question. They constituted a quorum and their action, which was not contrary to law nor contrary to the articles of incorporation or by-laws of the defendant corporation, was binding on the defendant corporation.

The defendant corporation, however, argues that "Arne Poulsen had a conflicting or adverse interest with respect to this loan, and therefore, could not be counted either as part of a quorum of the board of directors, or in any vote by said board, insofar as this loan was concerned."

It is true that a director of a corporation may not cast a vote upon an issue in which he has an adverse interest. However, here, Arne Poulsen, as a director of the defendant corporation, had *no* interest adverse to that of the defendant corporation.

First of all, there is substantial evidence in the record before us, although disputed in part, to support the District Court's finding that the $5,000, which is covered by the note in question, was a loan to the defendant corporation and, was not, as contended, consideration for the option agreement, and we so hold.

Secondly, the record discloses that the defendant corporation, at the time the note to the plaintiff was executed, was in debt and in immediate need of money to cover current operating expenses. Poulsen, in order to obtain an option to purchase the shares of stock in the defendant corporation was required to obtain a loan of $20,000 (which was later lowered to $10,000) for the defendant corporation. When he obtained the $5,000 loan from the plaintiff for the defendant corporation, he was acting as an agent of the defendant corporation. He was not,

as the defendant contends, acting as the agent of the plaintiff. If such were the case, every borrower would automatically become an agent of his lender, with all the usual rules of agency applying. And, there are no other facts in the record before us giving rise to the proposition that such an agency relationship existed between Poulsen and the plaintiff. Rather, the facts support the opposite conclusion.

Thirdly, all the cases cited by the defendant in support of its contention are clearly distinguishable from the case at bar.

In McConnell v. Combination Mining & Milling Co., 30 Mont. 239, 76 P. 194; on re-hearing, 31 Mont. 563, 79 P. 248, four directors of a corporation voted three of their members salaries and back pay; in O'Rourke v. Grand Opera House Co., 47 Mont. 459, 133 P. 965, at a meeting of the board of directors, which consisted of three members, two of the members, one of whom was the president of the corporation, attended and, by resolution, authorized the *execution of a promissory note to the president* for moneys advanced by the latter to the corporation; in Gordon Campbell Petroleum Co. v. Gordon Campbell-Kevin Syndicate, 75 Mont. 261, 242 P. 540, only two of the three trustees constituting the board of trustees of a business trust were present at one of its meetings when the individual claim of one of the two was presented for allowance and an account stated agreed upon; and in Stanton v. Occidental Life Ins. Co., 81 Mont. 44, 261 P. 620, the president and the secretary of a corporation entered into an agreement, whereby the president obtained a settlement and release of his promissory note made to the corporation, for some $15,000 less than was due on the note.

In the case at bar, on the other hand, two of the three directors of the defendant corporation, in the absence of the third director, authorized the execution of a promissory note *to a third party,* the plaintiff. These directors did not execute the note to themselves nor did they stand to profit from its execution.

Arne Poulsen, as president of the defendant corporation, not only had express authority to execute the note in question, but he also had *implied* authority.

■ In the absence of special authority, the president of a corporation has no power, merely by virtue of his office alone, to execute negotiable paper in the name of the corporation. (Alley v. Butte & Western Mining Co., 77 Mont. 477, 251 P. 517.) "Where, however, such power is specially conferred upon him [president] * * * by the corporate charter or by a resolution or by-law of the board of directors, or, *where such power exists, by implication* from the nature of the agency or *by reason of his* * * * being held out by custom or course of dealing as having such authority, or being *intrusted with the conduct and management of the corporate affairs, which requires the use of such instruments in the ordinary course of the business, the president* * * * *may bind the corporation by the execution* * * * *of negotiable paper* * * *.*" (Emphasis supplied.) 19 C.J.S. Corporations, § 1060(c), pp. 587-588.

The plaintiff's case does not here rest upon the proposition that Poulsen's authority to bind the corporation by promissory notes executed for it or in its name may be implied from the mere fact of his official position. To the proof of the fact that he was president, or chief executive officer of the defendant corporation, is added other evidence that he was also one of its three directors and the *manager* of its business. The entire corporation was made up of Poulsen, Alvin Koenig, and one R. W. Brenneke, who is not shown to have any active hand in the business. The record shows that Poulsen had and exercised "full management and control of the affairs of said corporation." The evidence as to the whole course of conduct of the directors and stockholders of the defendant corporation in allowing Poulsen such "full management and control" was sufficient to justify a finding that he was thereby vested with power to borrow money on the note of the corporaton.

The defendant corporation was in debt and Poulsen, as a

faithful servant intent on saving his corporation, did what the ordinary prudent business man would do in carrying on the affairs of the corporation (i. e., borrow money in the name of the corporation and bind it by a note evidencing the same) and, in so doing, violated no statute of this state, nor the articles of incorporation or any by-law of the defendant corporation. Poulsen was dealing with a matter directly connected with the ordinary business affairs of the defendant corporation and the promissory note to the plaintiff was such as was usual, proper, and necessary, under the circumstances, in the ordinary prosecution of the corporation's business.

The defendant further contends that the note in question was not properly executed in that it was not attested by the secretary as was the usual custom and practice of the defendant corporation. Where the corporation receives the benefit of the note, as was clearly shown in this case, the corporation is estopped from setting up as a defense to an action on the note an informality in its execution. (19 C.J.S. Corporations, § 1226, pp. 909-910.)

It is also contended that the defendant corporation received no consideration for the note in question. That this contention is without merit is obvious. The consideration for the note was $5,000, which went to pay claims outstanding against the defendant corporation. Even Gerald Koenig, principal witness for the defendant, testified that he was, as a result of the plaintiff's loan, able to cash checks against the defendant corporation which he had previously thereto been unable to cash because of insufficient funds in the corporation's account. He also testified that, as a result of the loan, he was able to subsequently draw and cash other checks payable to himself. These and other facts in the record lead us to but one conclusion and that is that the defendant corporation received full and adequate consideration for the note in question.

There being substantial evidence to support the judgment and

no reversible error in the record, the judgment of the District Court is affirmed. It is so ordered.

Affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR, DOYLE and CASTLES concur.