Edward R. KENNEALLY, Trustee of Reed Plumbing, Heating and Air-Conditioning, Inc., Appellant,

v.

FIRST NATIONAL BANK OF ANOKA, Appellee.

No. 19108.

United States Court of Appeals Eighth Circuit.

Sept. 24, 1968.

As Amended on Denial of Rehearing Oct. 31, 1968.

Certiorari Denied Jan. 27, 1969.

See 89 S.Ct. 716.

James E. Culhane, of Culhane & Culhane, Minneapolis, Minn., for appellant; Michael L. Culhane, on the briefs.

Thomas G. Lovett, Jr., Minneapolis, Minn., for appellee.

**840**

Before MATTHES and HEANEY, Circuit Judges, and REGISTER, Chief District Judge.

HEANEY, Circuit Judge.

The trustee in bankruptcy appeals from an order of the District Court confirming the referee's decision. The referee found that the trustee was estopped to deny that the bank was a secured creditor by virtue of an assignment of accounts receivable and a factor's lien. We hold that the security instruments were not valid, did not bind the corporation or estop the trustee and that payments received by the bank under these instruments were preferential under § 60 of the Bankruptcy Act (11 U.S.C. § 96). We reverse and remand with directions to determine the validity of prior assignments of accounts receivable.

Reed, Inc., was incorporated pursuant to Minnesota law on November 21, 1963. Albert F. Reed, Jr., a thirty per cent stockholder, was named President. His wife, Marcella Reed, a ten per cent stockholder, was named Secretary. The other stockholders were Rosina Popp, Vice President, a fifty per cent stockholder, and Marie Reed, Treasurer, a ten per cent stockholder.

On February 24, 1964, Mr. Reed negotiated a $12,000 loan with the First National Bank of Anoka. The loan was evidenced by a note whose terms are not apparent from the record. Accounts receivable, having a book value of $12,164, were assigned as security. The assignment was executed by Reed. His wife did not join in its execution. Additional assignments, with or without Mrs. Reed's signature, may have been made as payments were made on those originally assigned.[1]

In late March or early April, Reed, Inc., was in need of funds to meet payrolls and other operating expenses. On April 8th, Mr. Reed negotiated a new loan with the bank. On that date $11,436 remained to be paid on the February 24th note. The face value of the uncollected accounts receivable was $8,700. Their actual value was substantially less than that amount.[2] The bank advanced an additional $4,564, cancelled the original note and took a two-week eight per cent note for $16,000 from the corporation. The bank also took an assignment of accounts receivable and a factor's lien on the inventory as security. The accounts receivable assigned, which apparently included those previously assigned, had a book value of $21,000 and a subsequently appraised value of $15,750.

The inventory (merchandise) had a book value of $21,000 and a subsequent determined appraised value of $7,931.[3] The April 8th note was signed:

"Reed Plumbing, Heating and Air Conditioning, Inc. By Albert F. Reed, Jr., Pres.

Marcella E. Reed"

The April 8th assignment was signed:[4]

"Reed Plumbing, Heating and Air Conditioning, Inc. By: Albert F. Reed, Jr."

And the April 8th factor's lien was signed:

"Reed Plumbing, Heating and Air Conditioning, Inc. Albert F. Reed, Jr., Pres."

---

1. The books of the bankrupt, received as an exhibit, indicate that payments were made to and additional loans were received from the bank between February 26 and April 8, 1964. Neither the books nor other testimony indicate whether additional accounts receivable were assigned or substituted. Absent a record of other assignments, we consider the validity of the one of April 8th only.

2. The court appointed appraiser testified that the fair value of the accounts receivable was at least twenty-five per cent less than their book value, and that the

$100 carried as a reserve for bad debts was insufficient.

3. The appraiser testified that he inventoried the merchandise at $17,624, and appraised it at $7,931; he inventoried office furniture at $84 and appraised it at $52; and he inventoried miscellaneous hand tools at $85 and appraised them at $34. The trustee sold the above items for $8,668. Trucks were inventoried at $2,275, appraised at $300, and sold for $285.

4. The February 24, 1964, assignment was executed in the same manner.

The sum of $9,095 had been paid on the April 8th note by June 12, 1964. On that date, Reed, Inc., initiated this proceeding by filing a voluntary bankruptcy petition.

## THE VALIDITY OF THE NOTE, THE ASSIGNMENT AND THE FACTOR'S LIEN OF APRIL 8TH.

*The Note.*

The corporate resolution authorizing Reed, Inc., to borrow money and give security for it required the signatures of the President and the Secretary. This resolution was filed with the bank on a form provided and completed by the bank.

The trustee contends that the absence of the word "Secretary" in Mrs. Reed's signature defeats its validity. He also argues that Mrs. Reed signed the note in her individual capacity.

■ The referee found that the word "Secretary" had been inadvertently omitted from the note. He also found that it could be inferred from the circumstances that Mrs. Reed had signed the note in her official capacity. These findings are supported by substantial evidence.

■ The inadvertent omission of the signer's title will not affect the validity of an instrument where it is clear the instrument was signed by a party in an official capacity. Towers v. Stevens Cattle Co., 83 Minn. 243, 86 N.W. 88 (1901); Bentall v. Koenig Brothers, Inc., 140 Mont. 339, 372 P.2d 91 (1962); St. Clair v. Rutledge, 115 Wis. 583, 92 N.W. 234 (1902); 7 Fletcher on Corporations § 3035, p. 103. We affirm the decision of the referee and the District Court holding the note valid.

## THE FACTOR'S LIEN AND ASSIGNMENT OF ACCOUNTS RECEIVABLE OF APRIL 8TH.

The referee found: that the factor's lien and assignment which were both dated April 8, 1964, were signed by Mr. Reed at a time when Mrs. Reed was not present; that neither Mrs. Reed nor the other officers of Reed, Inc., had either prior to subsequent knowledge of their existence; that the bank was aware of the requirement that the signatures of the President and the Secretary were required on any security instruments; that the bank knew that the President's signature was the only one on the security instruments; and that there was no evidence to support the view that the directors and the stockholders, other than Albert Reed, had acquiesced in signing the security instruments or to support the view that authority for him to sign could be implied from past transactions.

Implicit in the above findings which are supported by the record is the unstated finding that the security instruments were signed by Albert Reed after Mrs. Reed had signed the note.

The referee concluded that the President had neither express nor implied authority to bind the corporation by his signature alone, that he was without apparent authority to do so and that his act had not been ratified by the corporation.

The District Court, on the other hand, held that the factor's lien and the assignment were validly executed corporate instruments because: the bank was not responsible for knowing and following the corporate by-laws; the President had been the sole executor of an earlier assignment; the President had signed the April 8th instruments in his official capacity; the transaction was a corporate one; an argument for express or implied authority could be made; and ratification could be supported.

*We agree with the referee's conclusion* that the security instruments were invalid.

■ Reed was without express or implied authority to bind the corporation by his signature. Express authority was negated by the terms of the resolution. While implied authority may be inferred from facts and circumstances, Best v. Krey, 83 Minn. 32, 85 N.W. 822 (1901); Restatement, Second, Agency § 7 Comment c., where a principal has expressly required the concurrence of two officers

to exercise a specific authority, neither has implied authority to exercise such power without concurrence of the other. Bloomingdale v. Cushman, 134 Minn. 445, 159 N.W. 1078, 1080 (1916).

■ The appellee argues that Reed's authority to sign the factor's lien and the assignment can be implied from the fact that his wife joined in the execution of the note. We do not agree. The authority to give security instruments cannot be inferred from the authority to borrow. American Nat. Bank of Sapulpa, Okl. v. Bartlett, 40 F.2d 21 (10th Cir. 1930); Restatement, Second, Agency § 75 Comment b. See, Wells & Co. v. Sharp, 208 F. 393, 398 (8th Cir. 1931).

The appellee also urges that a finding of apparent authority can be sustained as (1) the resolution furnished to the bank was ambiguous, and (2) there was a history of the President alone executing security instruments on behalf of the corporation.

In our view, the resolution is unambiguous. It provides:

"RESOLVED, that *Albert F. Reed, Jr., President and Marcella E. Reed, Secretary (both signatures required)* be and they hereby are authorized to borrow from time to time on behalf of this corporation from the above bank sums of money * * *.

"That said officers are hereby authorized to pledge or mortgage any of the [property] * * * of the corporation, * * *."

(The italicized words were typed by the bank.)

■■ The appellee's second contention is also without merit as only those who have acted in reliance upon the apparent authority of the agent are entitled to recover where the agent possessed no actual authority, express or implied. Dispatch Printing Co. v. National Bank of Commerce, 115 Minn. 157, 132 N.W. 2 (1911); Restatement, Second, Agency § 8 Comment c. Here, there was no reliance as the bank knew that two signatures were required and only one was present.

■■ The District Court found that "ratification can be easily supported." We do not agree. There is no evidence that any of the officers, other than the President, had knowledge of the execution of the security instruments. While knowledge of an officer may be imputed to a corporation, the knowledge must be that of an officer; other than the wrongdoer, if the corporation is to be bound. Ft. Dearborn Nat. Bank v. Seymour, 75 Minn. 100, 77 N.W. 543 (1898); Restatement, Second, Agency §§ 91, 272 Comment c.; 2 Fletcher on Corporations §§ 758–59, pp. 1087–89.

Nor were the security instruments ratified by a retention of benefits. The corporation received and retained $4,500 in additional funds as a result of the loan. While Mrs. Reed signed the note and presumably knew that the corporation was obtaining $4,500 in additional funds, there is no evidence indicating that she or the other officers knew that the factor's lien and the assignment of accounts receivable had been given to secure the note. Such knowledge cannot be imputed to her or the corporation.[5] American Nat. Bank of Sapulpa, Okl. v. Bartlett, supra;[6] Restatement, Second, Agen-

5. The referee surmised " * * * that Marcella Reed may have refused to sign the factor's lien agreement because of its crippling effect on the business operation of the bankrupt corporation. * * *."

6. In *Bartlett*, the general manager of the corporation executed, without authority, a mortgage to secure a note which the bank would not renew without security. The general manager who was also the Secretary of the corporation, had the authority " 'to do whatever was necessary to keep the business going' " and he had in the past borrowed from the bank. The other officers and directors knew of the loan but not the security arrangement and the corporation made payments on the note. It was held:

" * * * [I]t is apparent that no question of ratification in fact, or of ratification by voluntary retention of the benefits of an agent's unauthorized act, is present; and this for the reason that neither the corporation or Mr. Mayer [President of the corporation

cy § 91; 2 Fletcher on Corporations § 758, pp. 1087–88.

The referee, while rejecting the validity of the security instruments, found that the bankrupt was estopped to deny their validity on equitable principles and that the trustee was similarly estopped. He stated:

"It is settled that in a case where the facts and circumstances happen to be as they are here, the bankruptcy court functions essentially as a court of equity and that equitable processes govern the exercise of that court's jurisdiction. In the opinion in Redmond v. United Funds Management Corp., 8 Cir., 144 F.2d 155, reference is made to 'a court of conscience' which assures justice to all parties since 'the malleable processes of courts of bankruptcy give assurance of a remedy that can be moulded and adapted to the needs of the occasion.' * * *."

The District Court agreed that the trustee was equitably estopped to contest the validity of the security instruments.

■ We do not believe that the doctrine of equitable estoppel can be applied under the circumstances of this case. Two elements are missing:

(1) "* * * There can be no estoppel as to facts equally known to both parties or as to facts which the party invoking the estoppel ought, in the exercise of reasonable prudence to know. * * *."

Froslee v. Sonju, 209 Minn. 522, 297 N.W. 1, 4 (1941); 6 Dunnel Digest (3d Ed.) § 3189. Here, the bank knew that Reed alone could not execute a valid security instrument:

(2) "There can be no estoppel unless the party sought to be estopped had full knowledge of the facts at the time of the representation, concealment, or other conduct claimed to give rise to

whose authority was needed to validly execute the mortgage] had any knowledge of the execution of the mortgage prior to the bankruptcy. Full knowledge of the unauthorized act, and of all

an estoppel, or was guilty of culpable negligence in not knowing them. * * *."

Froslee v. Sonju, supra at 4. Here, there is no showing that any of the officers of Reed, Inc., other than Albert Reed, knew or were guilty of negligence in not knowing that the President had executed the assignment and the factor's lien.

■ We conclude that the security instruments of April 8, 1964, are invalid and that neither Reed, Inc., nor the trustee is estopped to deny their validity.

We turn to the questions of (1) whether the February 24th assignment was valid, and, if so, (2) whether the bank is entitled to be treated as a secured creditor to the extent of the value of the accounts receivable assigned on that date and remaining uncollected on the date of bankruptcy.

The trustee challenged the validity of this assignment but little evidence was offered on the issue. The referee and the District Court used language in their opinions supporting its validity but did so largely on the basis of their decision holding the trustee estopped to assert the invalidity of the April assignment.

Were we to base our decision on the evidence offered, we would be required to hold that the February assignment was invalid. We are reluctant to decide the issue, however, as there may be facts or circumstances substantiating its validity which have not been presented.

■ We believe that the failure to offer all the evidence relating to its validity is understandable in the light of the theory under which the case was tried and that the parties should be given the opportunity on remand to offer additional evidence bearing on this issue. This will permit substantial justice to be done. See, 28 U.S.C. § 2106 (1964 ed.); Pepper v. Litton, 308 U.S. 295, 304–305,

material matters related to it, is an essential to a valid ratification. * * *." American Nat. Bank of Sapulpa, Okl. v. Bartlett, 40 F.2d 21, 23 (10th Cir. 1930).

60 S.Ct. 238, 84 L.Ed. 281 (1939); United States v. Duggan, 210 F.2d 926 (8th Cir. 1954); United States v. Hall, 398 F.2d 383 (8th Cir. 1968).

If the February assignment is found to be valid, the bank is entitled to be treated as a secured creditor to the extent of the value of the assigned but uncollected accounts receivable.

■ Support for this position is found in decisions holding that the substitution of one security for another of greater value constitutes a voidable preference but only to the extent that the substituted security exceeds the value of the original one. In re Grosse, 24 F.2d 305 (7th Cir. 1928); In re Pusey, Maynes, Breish Co., 37 F.Supp. 316 (D.C.Pa.), aff'd 122 F.2d 606 (3d Cir. 1941); 3 Collier on Bankruptcy (14th Ed.) § 6021, pp. 862–64.

■ We believe that, absent fraud, the rationale of these decisions can be extended to support the proposition that the substitution of an invalid security for a valid one does not operate to deprive a creditor of the benefits of the valid security. There is no evidence of fraud here.

On remand, a determination should be made as to whether the earlier assignment was valid; and if valid, its value.

### WERE PAYMENTS UNDER THE NOTE OF APRIL 8TH PREFERENTIAL?

There remains the question of whether payments of $9,095 received by the bank from Reed, Inc., on the valid $16,000 note between April 8 and June 12, 1964, constitute a preferential transfer.

■ The trustee, to prevail, must prove the seven elements which make up

a voidable preference. Bankruptcy Act § 60(a) and (b), 11 U.S.C. § 96(a) and (b).[7] Of these elements, we are concerned with two: (1) did the bank have reasonable cause to believe the debtor insolvent at the time of the transfer; and (2) did the transfer enable the bank to obtain payment of a greater percentage of its debt than some other creditor of the same class?

The referee found that the trustee had established the first element but not the second. The District Court found the trustee had established the second but not the first. Both agreed—no preference.

■ The trustee has the burden of establishing insolvency at the time of transfer. In re Collins & Kiser Construction Company, 204 F.Supp. 42 (D.C. Iowa), aff'd sub nom Employers Mutual Casualty Company v. Hinshaw, 309 F.2d 806 (8th Cir. 1962). However, he need not show actual knowledge.

" * * * It is sufficient that a state of facts has been brought to the creditor's attention concerning the affairs and financial condition of the debtor that would lead a prudent businessman to conclude that the debtor is insolvent. The creditor is charged with the knowledge which a reasonably diligent inquiry would disclose. * * *."

C. A. Swanson & Sons Poultry Company v. Wylie, 237 F.2d 16, 19 (9th Cir. 1956).

It is conceded that the bankrupt was insolvent as of April 8, 1964.

■ We are not convinced that the referee's finding that the bank had reasonable cause to believe that the corporation was insolvent is clearly erroneous.[8] The bank demanded and received as security for the loan an assignment of all

---

7. The elements of a preference are: (1) the transfer of any of the debtor's property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) while insolvent; (5) within four months of filing of petition in bankruptcy; (6) which will enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class; and (7) such creditor has reasonable cause to believe that the

debtor is insolvent at the time of transfer.

8. The clearly erroneous standard is applied to the referee's findings rather than to those of the District Court. Employers Mutual Casualty Company v. Hinshaw, 309 F.2d 806 (8th Cir. 1962); Gross v. Fidelity & Deposit Company of Maryland, 302 F.2d 338 (8th Cir. 1962); O'Rieley v. Endicott-Johnson Corp., 297 F.2d 1 (8th Cir. 1961).

accounts receivable and a factor's lien on the inventory. This, in and of itself, is an indication of insolvency. C. A. Swanson & Sons Poultry Company v. Wylie, supra, at 18 n. 7; Marin v. A. Y. McDonald Mfg. Co., 159 Minn. 447, 199 N.W. 176 (1924). The conversations between Mr. Reed and the bank when the loan was made are indicative of insolvency. Reed stated that he needed the money immediately to meet his payroll and to continue in business. The bank acknowledged that it told Reed that if he didn't get additional money immediately that he was going to fold. The terms of the loan, eight per cent interest with maturity in two weeks, suggest a corporation in difficulty.

We also hold that the trustee introduced sufficient evidence to establish the greater percentage element. The bank has received a payment of $9,095 on the $16,000 note. The introduction of the general ledger and general journal schedules in bankruptcy, claims register of the bankruptcy court pertaining to this bankruptcy, accounts receivable ledger and appraisal and inventory of assets when considered with the testimony of Albert Reed and John Sprague, the appraiser, leads inescapably to such conclusion.

The bankrupt's assets on June 12, 1964, were $22,250 against liabilities of $35,522.

*ASSETS:*

| | |
|---|---:|
| Cash | $ 273 |
| Accounts Receivable | 13,024 |
| Merchandise, office furniture, misc. hand tools (sold by trustee) | 8,668 |
| Trucks (sold by trustee) | 285 |
| | $22,250 |

*LIABILITIES:*

| | |
|---|---:|
| Claim No. 17 (bank's claim allowed by referee as secured claim) | $ 6,904 |
| Secured and Priority Claims | 5,838 |
| Unsecured Creditor Claims | 22,780 |
| | $35,522 |

The amount available for distribution on unsecured claims can be determined with reasonable certainty and the amount of dividends which could be paid on unsecured claims can be readily calculated. The benefit conferred on unsecured creditors can then be compared with the benefit conferred upon the beneficiary of the preferential transfer. Thus, it may be determined who would receive the greater benefit percentage-wise—the unsecured claimants or the beneficiary of the preferential transfer.

Subtracting the secured and priority claims ($5,840) from the assets ($22,250), we are left with $16,410 against unsecured claims of $29,684, which includes the bank's claim of $6,904. Each unsecured creditor will receive approximately fifty-five per cent of his claim, or approximately fifty-five cents on the dollar. When we consider the bank has already received payments of $9,095, it is obvious that the bank will receive a greater percentage of its claim than any other unsecured creditor of its class. The bank would have received $9,095, plus fifty-five per cent of the $6,904 claim.

One further issue remains for decision. On March 13, 1964, the bank made a personal loan to Mr. Reed in the sum of $4,300.[9] The bank took as security a chattel mortgage on five trucks, which it assumed were personally owned by Reed. The trucks were, in fact, owned by Reed,

9. The testimony of Mr. Gregerson, President of the bank, clearly establishes this.
"Q. Was the loan made to the corporation?
"A. No.
"Q. To whom was the loan made?
"A. To Albert F. Reed, Jr.
"Q. Were you as the officer in charge of the loan directed to do anything particularly with the proceeds of the loan?

"A. Yes.
"Q. What were you directed to do?
"A. To credit it, the proceeds of the loan, to Reed Plumbing, Heating and Air Conditioning Company [Directed by Reed.].
"Q. Its account with the bank?
"A. That is correct."

Inc. The note and the mortgage were signed "Albert F. Reed, Jr." The proceeds of the loan were deposited by Mr. Reed in the bank to cover a corporate overdraft of approximately $4,000. On May 7, 1964, the corporation sold two of the trucks. The purchaser paid the agreed price, $1,100, to the bank. This was done on Reed's instructions.

The referee held that the note and mortgage were invalid corporate instruments as they had not been signed by the Secretary as required by the by-laws and the resolution on file with the bank. He stated:

"The bank must look to Albert F. Reed, Jr., personally and to his individual estate for repayments of the monies lent him. Consequently, the bank is not entitled to hold the estate of the bankrupt corporation liable for such monies and is not entitled to a lien on the property and the estate of the bankrupt corporation to secure repayment."

The District Court confirmed this decision without comment. We sustain the decision for the reasons stated by the referee.

The referee refused to order a repayment of the $1,100, however, concluding that the payment did not constitute an illegal preference because the trustee had failed to prove the requisite greater percentage element. The District Court reached the same conclusion but gave a different reason for so doing. It held that the trustee had failed to prove that the bank had reasonable cause to believe that Reed, Inc., was insolvent at the time of the transfer and, thus, failed to prove a preferential transfer.

The respective reasons given by the District Court and referee are identical to those given by them in concluding that payments made on the April 8th assignment were not preferential. We reject that reasoning on the grounds previously stated.

Reversed and remanded for action consistent with this opinion.