E. E. SCOTT, Trustee for Hudson Studios, Inc., and John H. Hudson, Jr., & Associates, Inc., Bankrupts, Plaintiff,

v.

BUILDER MARTS OF AMERICA, INC., Defendant.

Civ. A. No. 69–1105.

United States District Court, D. South Carolina, Greenville Division.

March 4, 1971.

———◆———

Ray Williams, of Williams & Henry, and J. D. Todd, Jr., of Leatherwood, Walker, Todd & Mann, Greenville, S. C., for plaintiff.

George F. Townes, of Abrams, Bowen & Townes, Greenville, S. C., for defendant.

## ORDER

HEMPHILL, District Judge.

Plaintiff, as trustee for the bankrupts Hudson Studios, Inc., and John H. Hud-

**956**

son, and Associates, Inc., brings this action to set aside an alleged preference under the provisions of the Bankruptcy Act.[1] After issues were joined and discovery complete, the cause was scheduled for non-jury consideration, and thereafter the court scheduled and administered a pretrial proceeding, held October 7, 1970 at Greenville. Agreement as to many salient facts was accomplished, and the issues narrowed to two crucial questions:

(1) Were the bankrupts (hereinafter call the Bankrupt because of interlocking relationships) insolvent as of May 1, 1969?

(2) At the time of the transfer (hypothecation) of the properties in question, did defendant have such reasonable cause to believe in the insolvency of the bankrupt, as to warrant a finding of preference?

Collateral matters discussed, but not crucial to a decision here, were: (a) the value of the properties involved in the alleged preference, and (b) the propriety of pursuit by the trustee, or the bankrupt separate in the name of and with permission of the trustee, of an alleged claim against School Pictures, Inc. and Special Promotions, Inc. (arising out of an alleged broken agreement with the bankrupt). These questions were deferred until such time as the critical issues are decided.

Defendant admits that of the seven elements of a preference,[2] five exist. Admittedly there has been (1) a transfer of the debtor's (bankrupt's) property, (2) to or for the benefit of a creditor (defendant), (3) for or on account of an antecedent debt, ( (4) while insolvent-disputed), (5) within four months of the filing of a petition in bankruptcy, (6) which will enable such creditor (defendant) to obtain a greater percentage of his debt than some other creditor of the same class, ( (7) such creditor has reasonable cause to believe that the debtor is insolvent at the time of the transfer—disputed).

In accordance with agreement of counsel as to the existence and truth of certain facts (at pre-trial) and after hearing the testimony and sifting the same for proof and credibility, this court declares the following to be its

## FINDINGS OF FACT

1. Plaintiff is the duly elected, qualified and acting Trustee in Bankruptcy of the estates of Hudson Studios, Inc. and John H. Hudson, Jr. & Associates, Inc., and, such estates are presently being administered by the United States District Court (in Bankruptcy) for the District of South Carolina as Case Nos. B/69–124 and B/69–125.

2. Hudson Studios, Inc., and John H. Hudson and Associates, Inc. (hereinafter referred to as the Bankrupt) were South Carolina business corporations owned and operated by John H. Hudson,

---

1. 11 U.S.C.A. § 96 et seq. (Section 60, sub. a of the Bankruptcy Act of 1938). Section 96(a) (1) provides:

Preferred creditors. A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

2. The elements of a preference are (1) the transfer of any of the debtor's property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt; (4) while insolvent; (5) within four months of filing of a petition in bankruptcy; (6) which will enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class; and (7) such creditor has reasonable cause to believe that the debtor is insolvent at the time of the transfer. Tyson v. National Discount Corp., 149 F.Supp. 592 (D.C. S.C.1957); Kenneally v. First National Bank of Anoka, 400 F.2d 838 (8th Cir. 1968).

Jr. Their business was the sale of photographic portraits through "store promotions". John H. Hudson, Jr. and Associates, Inc. was the sales organization and Hudson Studios, Inc. was the manufacturing organization. The two companies were wholly owned by John H. Hudson, Jr. and were operated as a single business, in Greenville, South Carolina.

3. On August 29, 1969, a voluntary Petition praying for an adjudication as a bankrupt was filed in the United States District Court for the District of South Carolina, Greenville Division, by Hudson Studios, Inc. and by John H. Hudson, Jr. & Associates, Inc., both corporations were adjudged bankrupt the same day.

4. The now-bankrupt companies successfully operated their business for a number of years and became a large organization doing business in several states. The companies' unaudited financial statements, issued on the basis of a September fiscal year, showed the companies to be in satisfactory financial position.

5. In 1968 Hudson made two unfortunate decisions: First, to move to a new location, involving the purchase of a large building on Main Street in Greenville, known as the Insurance Building, and second, to change from black and white photography to color photography. The Insurance Building was purchased in April, 1968 from Liberty Life Insurance Company. Extensive repairs and improvements were put into the building to accommodate it to the needs of Hudson.

In January of 1969, as a result of the expenditures on the building and as a result of undertaking to produce color portraits in large quantities, Hudson felt the need for additional capital. He found that a company known as Builder Marts of America, Inc. was interested in acquisitions. After meeting with Builder Marts of America, Inc. the Hudson Corporations and Builder Marts entered into an agreement for merger, consolidation or other form of acquisition.

On January 30, 1969, defendant Builder Marts of America, Inc., entered into an agreement with Hudson Studios, Inc. and John H. Hudson, Jr. & Associates, Inc. regarding a proposed merger of the defendant Builder Marts of America, Inc. with Hudson Studios, Inc. and John H. Hudson, Jr. & Associates, Inc. On the same day, the defendant made a loan to the two corporations in the amount of $200,000.00. The loan was evidenced by a note executed by Hudson Studios, Inc. and John H. Hudson, Jr., & Associates, Inc., and endorsed personally by John H. Hudson, Jr., the sole stockholder of the two corporations and the principal executive officer of the two corporations. At the same time, all of the capital stock in the two corporations was pledged as collateral for this loan. The note was for 90 days and payment was due April 30, 1969. No other security was given for the loan. In connection with the proposed merger agreement and in accordance with its terms, in February, 1969, the firm of Peat, Marwich, Mitchell & Co., a nationally-known firm of certified public accountants, was employed to conduct an audit of the books and records of Hudson Studios, Inc. and John H. Hudson, Jr. & Associates, Inc. There were not available on January 30, 1969, any certified audits, and the only financial statements which the defendant had when it advanced the $200,000.00 were uncertified statements made by an auditor named George O. Short, Jr., prepared without audit, and the latest of these was for the period ended September 30, 1968.

The acquisition agreement provided that the acquisition would be completed upon an audit of the financial records of the Hudson Companies.

6. Peat, Marwich, Mitchell & Co. commenced an audit some time in February, and on March 7, 1969 at a conference attended by representatives of Hudson Studios, Inc., John H. Hudson, Jr. &

Associates, Inc., the defendant, Builder Marts of America, Inc. and Peat, Marwich, Mitchell & Co., information was given by the auditors that due to the condition of the records of Hudson Studios, Inc. and John H. Hudson, Jr. & Associates, Inc., it was impossible to make any certified audit at that time, and that it would probably require some nine months or more to get an audit and the auditors were not even sure that one could be had even in that time. Due to the long period of time involved and the great expense involved in securing an audited statement of the affairs of these two corporations, the audit was called off.

A conference was held on March 7, 1969, at which the auditors suggested that it would be best for the Hudson Companies to hire a comptroller to put the books into shape to be audited, rather than have the auditing staff spend further time in preparing the books. Accordingly Builder Marts and Hudson procured Mr. Bill Kelley, a CPA, as comptroller for the Hudson Companies. Mr. Kelley came to work with the Hudson Corporations on May 15, and after two weeks work came to the conclusion the Hudson Corporations were insolvent. Mr. Kelley then went to work for Builder Marts.

In June, with the assistance of Builder Marts, the Hudson Corporations entered into an agreement to sell the business on a royalty basis to School Pictures, Inc. and Special Promotions, Inc. This agreement was consummated by a letter of intent dated June 21, 1969. The final closing was to be the first of July. Unfortunately this deal fell through. The Hudson business was deteriorating so rapidly that no further interested purchasers of the business could be found. Accordingly Builder Marts exercised its rights under the security agreement hereinafter described and Hudson in effect went out of business on or about July 7.

Out of the assets which Builder Marts acquired, it returned to the Hudson Companies money for current payroll and paid state and federal payroll taxes which were due or accruing. It further paid a few of the debts of the Hudson Corporations.

7. On May 1, 1969, the aforementioned merger agreement was cancelled. On the same day, without the advance of any new or additional consideration, a security agreement was executed by Hudson Studios, Inc. and John H. Hudson, Jr. & Associates, Inc. in favor of Builder Marts of America, Inc. in the amount of $200,000.00 covering all of the assets of the two corporations. Among the assets specifically mentioned in the security agreement were all the inventory of Hudson Studios, Inc. including materials, supplies, finished products, and goods of any description purchased for use or consumption by Hudson Studios, Inc. in the operation of its business, including all inventory located on the premises of Hudson Studios, Inc. on South Main Street, Greenville, South Carolina, and all inventory located in any other places. It also included all accounts receivable of Hudson Studios, Inc. then (now) existing or thereafter arising, all interest of Hudson Studios, Inc., then (now) existing or thereafter arising in goods or merchandise as to which any accounts receivable for goods sold or delivered had arisen, all goods, instruments, documents of title, policies and certificates of insurance, securities, chattel papers, deposits, cash, leases or other property owned by Hudson Studios, Inc. or in which Hudson Studios, Inc. had an interest, including both items (now) owned and those after acquired, and all proceeds and products of all of the foregoing. It further included all equipment, furnishings, fixtures, machinery, leased chattels and all other tangible property of every description, including but not limited to all property at the home office of such corporation at South Main Street, Greenville, South Carolina, and also including all equipment held by the agents and employees of said corporation, motor ve-

hicles, boats, airplanes, wherever located. This instrument also gave Builder Marts of America, Inc. the right to receive the possession of all incoming mail addressed to Hudson Studios, Inc. for the purpose of receiving therefrom all collections of receivables and all contract rights, and further, a group composed of Thomas A. Roe, Clarence B. Bauknight, Michael M. Martin and William M. Lee, all employees of Builder Marts of America, Inc., were given the right to endorse the name of the corporation upon any and all checks, drafts, money orders and other instruments for the payment of monies which are payable to said corporations and constitute collections on said corporations' accounts. This agreement, although executed on May 1, 1969, was back-dated to January 30, 1969. A financing statement relative to the security agreement was filed with the Secretary of State of South Carolina on May 5, 1969.

8. On May 1, 1969, a real estate mortgage in the amount of $200,000.00 was executed by Hudson Studios, Inc. covering the multi-story office building of this corporation along with property on East Stone Avenue. No new or additional consideration was given for the execution of this mortgage, and like the security agreement referred to in the preceding finding of fact, this mortgage was likewise back-dated to January 30, 1969. In the security agreement executed on May 1, 1969, but back-dated January 30, 1969, the following clause is found:

The phrase 'default and demand' as used in this agreement means that the $200,000.00 note is past due [the same being due 90 days from January 30, 1969] and that in addition demand has been made upon John H. Hudson, Jr., individually and as agent of the two corporations, for payment and that payment was not made forthwith and immediately upon such demand.

9. On July 7, 1969, the defendant seized and took possession of all of the assets of the two corporations except some insignificant odds and ends. At the same time, the defendant required all of the mail of the two corporations to be directed to it, and from that date on received all payments made to either of the corporations. The defendant assumed control of the cash assets of the corporations on that date, and from that time on the two corporations substantially ceased doing business other than completing doing work that was in the process.

10. Since July 7, 1969, the defendant has received from the sale of certain assets of the two insolvent corporations, from money through the mail, and from taking over the bank account of these two corporations the sum of $52,126.95. Out of these funds, the defendant has paid antecedent debts of the two insolvent corporations as follows:

| (a) 7/ 9/69 | – Abrams, Bowen & Townes | – $1,139.00; |
| (b) 7/16/69 | – Builders Supply Co. | – 70.38; |
| (c) 7/16/69 | – Citizens Builders Mart | – 429.39; |
| (d) 7/16/69 | – Peat, Marwich, Mitchell & Co. | – 900.00; |
| (e) 7/16/69 | – Bill Kelley | – 260.87. |

11. Despite the fact that Builder Marts had pumped $200,000 into the Hudson Corporations on January 30, 1969, the cash positions of the companies were such, on May 1, 1969, that additional funds had to be secured to continue the operation of the businesses. Builder Marts advanced an additional sum of $15,000 at which time it secured a second mortgage on the home of Mr. Hudson and a second mortgage on business property on Stone Avenue.

12. On January 30, 1969, Builder Marts had assigned to it the entire capital stock of the two corporations, and, as the assignee of the capital stock of the corporations and because of its pending acquisition of the Hudson Companies, was kept currently familiar with the affairs of the two corporations.

13. There is no evidence of any catastrophe occurring to the Hudson Cor-

porations between May 1, the time of the execution of the security agreement, and July 7, when Builder Marts took over all of the assets of the Hudson Corporations. The Trustee in Bankruptcy has been able to assemble only $6,168.55. The notice of the first meeting of the creditors as set out by the Referee in Bankruptcy showed total liabilities of Hudson Studios, Inc. of $766,447.27 with total assets of $104,430.72, and for John H. Hudson, Jr. & Associates, Inc., liabilities of $513,867.53 with total assets of $18,359.61. The assets coming into the hands of the Trustee in Bankruptcy of the two insolvent corporations are wholly inadequate to satisfy the claims of the unsecured creditors, or for that matter, for anything other than to pay for a token dividend.

## CONCLUSIONS OF LAW

A. The two questions necessary to the resolution of this case are (1) whether the Hudson Companies were insolvent May 1, 1969; and (2) whether Builder Marts of America had reasonable cause to believe the Hudson Corporations insolvent as of May 1, 1969.

■ At the hearing of the matter, the defendant did not seriously contest the insolvency of the Hudson Corporations on May 1, 1969. By June 1, Mr. Kelley, the defendant's employee and witness had determined that the Hudson companies were insolvent. The court is of the opinion that he testified that the insolvency dated back at least to the first of May. In any case, in the absence of any catastrophic occurrences to the Hudson Corporations after May 1, 1969, and in view of the hopelessly insolvent condition in early July of 1969, the only conclusion which can be reached is that both corporations were insolvent on May 1, 1969. See Snider v. England, 374 F.2d 717 (9th Cir. 1967).

■ B. The burden rests upon the trustee to show that Builder Marts knew or had reasonable cause to believe that the Hudson Corporations were insolvent on May 1, 1969. (Harrison v. Merchants National Bank, 124 F.2d 871 (8th Cir. 1942) ). Actual knowledge of the insolvency by the preferred creditor is not required to create avoidable preference under the Bankruptcy Act, and it is sufficient to show that a state of facts has been brought to the creditor's attention concerning the financial condition of the debtor which would lead a prudent businessman to believe that the debtor is insolvent, and creditor is charged with knowledge which reasonably diligent inquiry would disclose. C. A. Swanson & Sons Poultry Co. v. Wylie, 237 F.2d 16 (9th Cir. 1956).[3] Reasonable cause within the meaning of the preference provisions of the Bankruptcy Act is knowledge of such facts which would induce a reasonable belief as opposed to a mere suspicion. International Minerals & Chemical Corp. v. Moore, 361 F.2d 849 (5th Cir. 1966).

■ C. The proof of the plaintiff convinced this court that the defendant herein either knew of the insolvency at the date of the transfer or had reasonable cause to believe it existed. From the time of the advance of the funds by the defendant to the Hudson Corporations, the record reveals that the defendant was actively engaged in the business affairs of the insolvent corporations. In

---

3. Footnote 7 to this opinion reads:

The taking of a chattel mortgage covering all the stock in trade is notice of insolvency. In re Kent's Inc., D.C.Me. 1934, 9 F.Supp. 216, 217; In re Marcella Chocolate Co., D.C.Mass.1924, 299 F. 324; 325; Pierre Banking & Trust Co. v. Winkler, 1917, 39 S.Dak. 454, 165 N.W. 2; Marin v. A. Y. McDonald Mfg. Co., 1924, 159 Minn. 447, 199 N.W. 176; Pollock v. Jones, 4 Cir., 1903, 124 F. 163; In re Brayton, D.C.N.D.N.Y. 1922, 276 F. 1020; In re Clark, D.C. W.D.Mich.1926, 11 F.2d 540. Cf. Margolis v. Gem Factors Corp., 2 Cir., 1953, 201 F.2d 803, 805. See also 3 Collier on Bankruptcy (14th Ed., 1941), § 60.54, p. 1008; 4–A Remington on Bankruptcy (5th Ed., 1943), § 1709, pp. 229–230.

March, 1969, the defendant participated, in a conference with an audit team which had worked extensively on the Hudson books. The defendant claims to have learned only that those books were in a chaotic state. The defendant's president, who participated in that conference, was an experienced businessman. The court is of the opinion that, if he did not at that time learn that the companies were insolvent, he must at least have learned that the financial statement of September, upon which he had relied, was of questionable worth and that representations by Mr. Hudson of the worth of the business could be only estimates.

D. Hudson and Builder Marts together employed a comptroller for the Hudson Companies. He began work on the 15th of May, 1969 and in a matter of two weeks concluded that the firms were insolvent. The court does not question the reason given for the termination of the attempted audit by the Peat, Marwich, Mitchell & Co. team. It does, however, conclude that, as a result of that attempt to audit the books of the Hudson Companies, the defendant knew or had reason to know considerably more of the unhealthy financial condition of the companies than that their method of bookkeeping was improper.

E. The action of the defendant when the note for the original advance of the $200,000.00 became due at the first of May 1969 was that of a party who knew or had reason to know of the debtor's insolvency. The defendant demanded and received security for the note originally secured only by a pledge of the stock in the corporations. A demand for security does not constitute evidence of knowledge of insolvency. However, a security instrument as all inclusive as that given the defendant by Hudson does indicate notice of insolvency. C. A. Swanson & Sons Poultry Co. v. Wylie, supra.[4] The court also considers

significant the unexplained back dating of the instruments to January 30, 1969.

F. On May 1, 1969, the defendant loaned Hudson an additional $15,000 for use in meeting current obligations. The fact that the Hudson Companies were having difficulty meeting bills for operating expenses so soon after the original $200,000.00 advance by the defendant, indicated their dire circumstances. The letter of intent executed on May 1 imposed no obligation on the defendant Builder Marts and, therefore, is not inconsistent with apprehension by Builder Marts concerning the solvency of the Hudson corporations.

In light of all the circumstances surrounding the execution of the security agreement, the court concludes that Builder Marts knew or had reason to know of the insolvency of the Hudson corporations on May 1, 1969.

CONCLUSION

Without the preferential instruments of May 1, 1969, Builder Marts of America, Inc. was an unsecured creditor. Because of these instruments, it received a far greater percentage of the assets of the bankrupt corporations than it would have otherwise been entitled to. Builder Marts of America, Inc. should be required to forthwith account to and pay over to E. E. Scott, as Trustee in Bankruptcy for the two Hudson Corporations, all funds received by it because of the preference which the evidence shows to be $52,127.95. Builder Marts of America should likewise be required to forthwith account to and pay over to E. E. Scott, Trustee in Bankruptcy for the two Hudson Corporations, the value of all personal property and inventory of the two Hudson corporations seized by the defendant on July 7, 1969. Any further proceedings necessary for implementation of this order are hereby referred to the Referee in Bankruptcy.

And it is so ordered.

4. See also Kenneally v. First National Bank of Anoka, 400 F.2d 838, 844 (8th Cir. 1968).