No. 14411

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

NORTHWESTERN NATIONAL CASUALTY
COMPANY, a corporation,

        Plaintiff and Respondent,

   -vs-

BERNHARDT W. PHALEN, WILLIAM PHALEN
and THU DUC VO,

        Defendants and Appellants.

---

Appeal from:  District Court of the Fifth Judicial District,
            Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellants:

        Torger S. Oaas argued, Lewistown, Montana
        John Jardine, Whitehall, Montana

    For Respondent:

        Keller, Reynolds and Drake, Helena, Montana
        Glen L. Drake argued, Helena, Montana
        Thomas Johnson argued, Helena, Montana

---

              Submitted:  February 9, 1979

              Decided:  JUN 1 8 1979

Filed:  JUN 1 8 1979

*Thomas J. Kearney*
              Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This appeal is from a summary judgment entered in favor of Northwestern National Casualty Company in the District Court, Fifth Judicial District, Jefferson County, determining that no insurance coverage existed under a policy issued by the insurance company in an incident involving the defendant.

Northwestern had issued for a consideration a homeowner's policy to Bernhardt W. and Josephine Phalen for a one year term beginning November 3, 1976. The policy provided public liability insurance to the limit of $50,000 for each "occurrence" during its term. Defendant William Phalen is the son of Bernhardt and Josephine Phalen, a resident of their household, under the age of twenty-one years and as such an "insured" under the policy.

An "occurrence" is defined in the policy as an accident which results in bodily injury or property damage. The policy excludes from public liability coverage bodily injury which "is either expected or intended from the standpoint of the insured".

On January 29, 1977, William Phalen was involved in an altercation with Thu Duc Vo near the Windsor Bar near Boulder, Montana. Two weeks before, the same two persons had been involved in another altercation in which Thu Duc Vo hit William Phalen over the head with a beer bottle. On January 29, a Sunday, at 1:30 a.m., William Phalen walked into the Windsor Bar and saw Thu Duc Vo in the company of a young woman. At closing time, when everyone was leaving the bar, William Phalen went out with Vo and his woman companion. In a deposition, William Phalen described what happened then:

> "Q. What happened after you left the bar?
> A. He was walking on the street. I walked down the street, and I started talking to him, and I had my arm around [the young woman], and Thu was there. I kind of had my arm around him, too, just talking to him. We were having a verbal disagreement. He grabbed my arm, twisted

-2-

it, wanted me to release, and I hit him once.
Then, I was going to hit him again, and I
grabbed his coat, and he slipped out from me.
He ran around his car, and he ran back towards
the bar, and Harry Johnson tripped him up, and
he fell off the curb and hit the pavement.

". . .

"Q. O.K., and you testify you hit him only
once. A. Yes.

"Q. Then would you pick up your story from
there please? A. Yeah, well, I was going to hit
him twice, but when I went to swing, he
jumped away and I grabbed his coat, and
he run away from me. I had ahold of
his coat, and he ran away from me and ran
around his car, and then he ran right past me
again and that is when Harry Johnson tripped
him up.

"Q. Now, were you chasing him or was someone
restraining you or what? A. [The young
woman] was restraining me, but I started after
him; I made a few steps toward him, I guess.

"Q. So, he was at least running because
he was anticipating you chasing him; is that
correct? A. Yes, sir.

"Q. And while he was running, Harry Johnson
apparently tripped him? A. Yes.

"Q. What happened after he was tripped, then?
A. Well, he hit the pavement pretty hard.
I was--I looked at him, you know, and pretty
soon all these women just came hollering and
running so we decided we better get out of
there, and so we went down to my house.

". . .

"Q. I believe you testified before that
the way--you felt it was sort of an accident,
the extent of his injuries was--

"(Objected to as a leading question; trying to
lead the witness.)

"Q. Go ahead and answer. A. Will you
ask me again?

"Q. I believe you testified before that
this--the way he got hurt and the extent
of his injuries was accidental? A. Accidental
to me because I don't feel like I hurt him."

Subsequently, William Phalen was charged in the District
Court, Jefferson County, with felony aggravated assault. In the
affidavit of the county attorney for leave to file the information
it is recited that Thu Duc Vo attempted to run away but that

-3-

Harry Johnson tripped him, who then fell to the pavement and lost consciousness. The witnesses further stated to the county attorney that Thu Duc Vo was bleeding from the head and mouth and appeared to be choking on his own blood and having difficulty breathing.

The injuries suffered by Thu Duc Vo were substantial. The main fractures he sustained are to the zygoma and its attachment to the maxillary bone along the lower rim of the left orbit under his eye. He lost his left central incisor tooth and had swelling along the lower left side of his jaw and a laceration two millimeters long over the left corner of his mouth. He underwent surgery to realign the displaced fractured bones. He was treated by Dr. William Simic, of Helena, whose testimony showed:

> "Q. Let me go back for a minute, Doctor. I want to clear up something. When I asked you about the amount of trauma to the face, is it possible that one blow to the face from a fist could cause that type of break? A. It would be possible, if I might qualify this--
>
> "Q. Yes. A. It could be possible to have a fracture like this result from one blow. I would not think that the overall injury pattern to the face was the result of one blow. By that, I mean the injury to the eye, the cheek, the teeth, and of course, the fracture itself.
>
> "Q. Let me phrase it this way, Doctor. It isn't likely that one blow to the cheek would cause this type of injury? Is that a fair statement? A. No, that's highly unlikely."

When Vo was tripped by Johnson, he fell flat on his face in the street. Later, it was found that the lower orbital rim of Vo's left eye was displaced internally fifteen millimeters. In discussing this Dr. Simic testified:

> "Q. Could this type of displacement be caused by falling down and hitting your face on a hard object like a pavement or cement or something like that? Is it possible?

A. This particular fracture could. We will
sometimes see this. The injury picture as a
whole, I would think not.

"Q. But was there some peculiar thing about
this type of fracture that would indicate that
it could have been caused by falling down? A.
No. No, what I meant was that the other injuries
to the eyelid, the laceration of the cheek, along
with this, would indicate that it was more than a
simple fall of the cheek area."

William Phalen was represented in the criminal proceedings

against him by attorney John H. Jardine. In what appears to

be the result of a plea bargain, Phalen entered a plea of guilty

to the charge of aggravated assault, and was given a three year

sentence deferred subject (1) to the usual parole rules;

(2) that he pay Jefferson County the sum of $500 for the cost

of the proceedings; and, (3) that he make restitution to Vo

of one-half of Vo's medical and dental expenses to the limit

of $900, and to the extent that such expenses were not covered

by insurance. Judgment on Phalen's guilty plea was entered

July 21, 1977.

In the meantime, Vo had commenced a civil action against

William Phalen and Harold Johnson for the injuries which he

sustained in the incident. On May 6, 1977, he amended his

complaint to provide two counts. In count I, he charged the

willful, malicious and wrongful assault upon him by the defendants;

and in count II, he charged the defendants as follows:

"On or about January 29, 1977 upon and
about property known as the Windsor Bar in
the city of Boulder, county of Jefferson,
state of Montana defendant did then and
there negligently, carelessly, and wrongfully
assault, strike, beat and bruise plaintiff, and
did negligently and carelessly cause plaintiff
personal injuries hereinafter more particularly
described, all without cause or provocation
on the part of the plaintiff."

-5-

Attorney Jardine also represented William Phalen in connection with the civil action brought by Vo. On or about June 14, 1977, the attorney called Jalmer O. Carlson, claims manager for Northwestern, and advised him of the Vo suit against Phalen, and indicated the policy coverage might attach. Carlson asked about the status of the civil litigation. Attorney Jardine testified that it was his impression that "he [Carlson] told me to go ahead with the defense and that Northwestern would take care of that", although nobody said that specifically. Carlson, in his testimony, denies hiring the attorney to look after Northwestern's interest. However, Carlson did on June 27, 1977, send by certified mail a letter to all of the insureds as follows:

"Dear Mr. Phelan [sic]:

"This letter is to inform you that the Northwestern National Casualty Company is reserving the rights afforded both you and the company under policy no. NHO 44 80 42 in regard to an incident which took place on February 18, 1977 involving injuries to Thu Duc Vo. We are making this reservation so that the investigation may continue, that possible compromise settlements might be made and that any eventual litigation can be accomodated without prejudice to the rights of either party to the policy.

"This reservation of rights is being served because the above mentioned incident does not appear to meet the policy definition of occurance [sic] and for other reasons.

"The service of this notice does not deprive you of any rights you may have against this company.

". . ."

This action for declaratory judgment was not filed until September 16, 1977 because attorney Jardine wanted some time to see if he could "work something out".

-6-

In this action, cross-motions for summary judgment were made by the parties and on May 3, 1978, the District Court entered its declaratory judgment that there is no coverage for William Phalen under the Northwestern policy of insurance, arising out of the incident, and that Northwestern had no duty to defend the action brought by Thu Duc Vo against Phalen.

Phalen, the insured under Northwestern's policy, took no active part in the proceedings before the District Court nor in this appeal. Thu Duc Vo, as appellant, contends that the grant of summary judgment to Northwestern was improper. We agree with appellant Vo, as we determine that there is a fact question upon which coverage under Northwestern's policy may depend.

THE POLICY COVERAGE

We note that in no provision of Northwestern's policy, does the word "assault" appear, nor "intentionally inflicted", nor "committed by or at the direction of the insured". Accordingly, cases construing policies with those types of provisions do not reflect what the state of the law is or should be under the coverage extended in Northwestern's policy.

The policy in this case extends personal liability coverage to the insureds for damages caused by an "occurrence". The policy defines an occurrence as an accident resulting in bodily injury or property damage, excluding only bodily injury or property damage, which is either expected or intended from the standpoint of the insured.

In Grand River Lime Company v. Ohio Casualty Company, (1972), 32 Ohio App. 2d 178, 289 N.E.2d 360, it was held that the term "occurrence" is a broader term than "accident" where occurrence is defined in a policy as meaning an incident in which property damage is neither expected nor intended

-7-

from the viewpoint of the insured. There is no reason why the same meaning should not be applied where personal injury damages are involved instead of property damages. The word "occurrence" instead of the word "accident" in the insuring clause means that the word "occurrence" is in fact broader than the word "accident" and is so intended by the insurer. In such case, the intent of the policy is to insure the acts or omissions of the insured, including his intentional acts, excluding only those in which the resulting injury is either expected or intended from the insured's standpoint.

It is clear therefore, that the insured here would be debarred from coverage in those cases where his deliberate acts or assaults resulted in injuries which would be expected or intended by him to result from his deliberate acts. But what about coverage where the results of his acts (even though deliberate) are unexpected or not intended by the insured? The answer under such a policy provision is that (1) the event is an occurrence; (2) since it results in bodily injury it is an accident under the definition of the policy, and (3) since it is unintended or unexpected, it is within the coverage of the policy.

Such a construction of the insurance policy is not strained or forced, but rather is an interpretation of the plain, ordinary and popular meaning of the words used by the insurer in defining the coverage extended. It should be interpreted in that sense. Conlon v. Northern Life Insurance Company (1939), 108 Mont. 473, 92 P.2d 284. Exclusions and words of limitations must be strictly construed against the insurer. Kansas City Fire and Marine Insurance Company v. Clark (D.C. Mont. 1963), 217 F.Supp. 231. We do not consider this provision to be ambiguous; the possibility of unintended bodily injury brings that result within the policy coverage, even though Phalen's actions may have been intentional.

-8-

In interpreting the policy thusly, we have given consideration to the cases cited by Northwestern in support of its position that no coverage exists here. Most of the cases cited by Northwestern relate to a policy provision which excluded acts or injuries caused "intentionally by or at the direction of the insured". On that basis, and on the factual basis on which those cases were decided, they can be distinguished from the case at bar. Some of those cases include the following:

In Transamerica Insurance Company v. Cannon-Lowden Company (D.C. Mont. 1975), 400 F.Supp. 817, the jury found by special verdict that the insured had committed suicide when she drove her automobile at a speed in excess of 60 miles per hour out of her lane of traffic and directly into the path of a tractor-trailer unit driven by another. The court felt that the risk of damages from the insured's acts were so certain that it could be said as a matter of law that the damage was intentional and expected. The exclusion in the policy related to bodily injury and property damage caused "intentionally by or at the direction of the insured."

In Home Insurance Company v. Neilsen (Ind. 1975), 332 N.E.2d 240, again the exclusionary clause excluded bodily injury caused "intentionally by or at the direction of the insured". In that case, the insured claimed he did not intend to inflict the injuries of which plaintiff complained, and that his actions were performed in self-defense. The decision of the court that coverage did not apply, turned on the court's construction of the word "intentionally" as used in the policy. 332 N.E.2d 242.

In Caspersen v. Webber (Minn. 1973), 213 N.W.2d 327, the policy excluded "bodily injury . . . caused intentionally

-9-

by or at the direction of the insured." The insured pushed a hatcheck girl, who struck her back against a metal message rack attached to the wall. The insured stated he had no intention to harm her. The jury found that the insured had assaulted the hatcheck girl, and that he was negligent, and awarded general and punitive damages. The trial court refused judgment against the insurance company, saying the injuries were the direct result of the assault so that no coverage applied. The appellate court reversed, saying that the insurer is liable when the act is intended but the resulting injury is not. 213 N.W.2d at 230.

More to the point are cases which have construed policies which contained language excluding coverage for bodily injuries "either expected or intended from the standpoint of the insured." In determining the effect of this exclusionary clause, we note that it is a relatively recent provision used by insurers in this type of coverage. 79 A.L.R.3d 1125. On its face, the clause requires a two-fold test to determine coverage: (1) was the injury intended, or (2) was the injury to be expected by the insured? In Farmers Automobile Insurance Association v. Medina (Ill. 1975), 329 N.E.2d 430, it appears a minor boy intentionally flipped matches upon a gasoline spot directly below a parked automobile. The gasoline ignited and burned the automobile. In considering the clause identical to the one at bar, the Illinois court said:

> "In examining the various court decisions
> both in this state and from other jurisdictions,
> we find that the courts have considered this
> exclusionary clause, and a most comparable
> one, which reads as follows:
>
> "'To injury . . . caused intentionally
> by or at the direction of the insured.'

"It is to be noted that the exclusionary clause in the case before us contains the expression or word 'expected'. The term 'expected' has been judicially construed to mean a high degree of certainty. (Citing cases.) In several cases which have considered exclusionary clauses containing the term 'expected' in addition to the term 'intended' the court's have failed to find that the addition of the term 'expected' affected the outcome of the case. (Citing cases.) It is possible to envision situations in which the inclusion of the term 'expected' in an insurance exclusionary clause could alter the outcome of a suit which required interpretation of the clause, however, in view of the result we reach herein, we find that further discussion of the distinctions between the terms 'intended' and 'expected' is unnecessary." 329 N.E.2d at 432. (Emphasis added.)

The Illinois court, in Medina, relying on the New Jersey case of Lyons v. Hartford Insurance Group (N.J. 1973), 310 A.2d 485, decided that the general rule is that coverage exists under an exclusion clause identical or similar to this one for the unintended results of an intentional act but not for damages assessed because of an injury which was intended to be inflicted. 329 N.E.2d at 433.

No clear rule has yet emerged from those cases which have specifically considered and turned on this particular exclusionary clause. In State Farm Fire and Casualty Company v. Muth (Neb. 1973), 207 N.W.2d 364, in an action for declaratory judgment between the insurer, insured and judgment creditor of the insured, it appeared that the insured, a minor, had fired a b.b. gun from an automobile toward the judgment creditor and the pellet struck the judgment creditor in the eye, causing loss of sight. The trial judge in the declaratory judgment action found that when the minor caused the gun to discharge in the direction of the judgment creditor, the minor did not intend or expect to do bodily injury to him; therefore, it found the minor was negligent and the exclusion did not apply. In interpreting the exclusionary language, the Nebraska court said that bodily

-11-

injury is excluded "if the insured acted with a specific intent to cause harm to a third party".  207 N.W.2d 366.

Other cases involving the same exclusionary clause include Armstrong v. Security Insurance Group (Ala. 1973), 288 So.2d 134, where the husband and wife were the named insureds as the operators of a sandwich shop, and it was held that the clause excluded coverage for the husband who shot a patron but did not exclude coverage for the wife who was standing nearby.

In Terito v. McAndrew (Louis. 1971), 246 So.2d 235, it was held that the owner of a hotel bar, who knocked the patron from a barstool "to shut his mouth" and who had fallen on the patron after he fell off a barstool so that the patron's knee was injured, did not have coverage under this clause.  In Commercial Union Insurance Company v. City of Montpelier (Vt. 1976), 353 A.2d 344, it was held that the insurer owed the City a defense where police officers were charged with assaults upon the plaintiff, again with the same clause.

After examination of the cases, and the exclusion itself, we would interpret the clause to mean that it precludes coverage for bodily injuries or damages, though not specifically intended by the insured, if the resulting harm was within the expectation or intention of the insured from his standpoint. That statement more precisely fits the language of the coverage provided by the insurer.  Out of that interpretation a question of fact exists in this case as to whether coverage should apply in view of the alleged accompanying and concurrently negligent acts of Harry Johnson which may have exacerbated the injuries Vo received.

THE FACT ISSUE

From the medical testimony, it appears that the massive injuries to Vo's face could have resulted from the fall to the pavement, or from the single blow that Phalen admits

-12-

he struck, or from a combination of both. Dr. Simic did not believe that a single blow would cause the injuries which extended from the lower orbital rim of the left eye where a fifteen millimeter displacement occurred, to the left corner of Vo's cheek, where his lip was lacerated. The part of Vo's injuries, if any, which resulted from the fall to the street, were proximately caused, apparently, by the fact that Phalen was chasing Vo when Vo was tripped by Johnson and the fall to the street ensued. Even if Phalen's act of chasing is deemed to be intentional, the intervening act of Johnson in tripping Vo and the resulting injuries may not have been expected or intended by Phalen. At least a fact issue as to that element of the claim exists. A situation is presented where Phalen's act of chasing could be considered by a jury to be concurrently negligent with the negligence of Johnson in tripping Vo. Where one defendant's negligence is a contributing proximate cause of injury, and neither defendant is responsible for the other, each defendant is liable, provided the injury would not have been sustained but for his negligence. Marinkovich v. Tierney (1932), 93 Mont. 72, 17 P.2d 93; Bensley v. Miles City (1932), 91 Mont. 561, 9 P.2d 168. Where several causes producing injury are concurrent and each is an efficient cause without which the injury would not have occurred, the injury may be attributed to all or any of the causes, and recovery may be had against either or all of the responsible persons, though one of them was more culpable and the duty owed by them to the injured person was not the same. See Daly v. Swift and Company (1931), 90 Mont. 52, 300 P. 265.

A fact question exists as to whether Phalen in chasing or offering to chase Vo, would have expected or intended that Johnson would trip him and crash him on his face to the pavement. If the trier found that Vo's injuries were unexpected by Phalen, certainly Northwestern's policy extended coverage for the incident.                    -13-

If Phalen's chasing were a proximate cause of the eventual injuries, it would be the accompanying act of the concurrently negligent Johnson that brought about the unexpected and unintended result, a result which Phalen himself testified he did not intend.

The proper place for the determination of this fact issue is in the original action brought by Vo against Phalen and Johnson. Whether Vo's injuries were expected or intended by Phalen can be determined in that case through the use of special interrogatories to the jury, or if the case is tried by a judge without a jury, through findings made by the court.

## WAIVER BY NORTHWESTERN

Thu Duc Vo also contends that Northwestern waived any right to dispute coverage by assuming the defense of the action on behalf of Phalen. Vo also contends that Northwestern's letter of June 27, 1977, is an inadequate reservation of rights under the case of Henry v. Johnson (Kan. 1963), 381 P.2d 538.

In view of our determination that a fact issue exists which requires reversal, we do not need to determine at this time the question of such waiver, or whether Thu Duc Vo, as a claimant, can take advantage of a waiver by Northwestern to its insured Phalen.

## NORTHWESTERN'S DUTY TO DEFEND

In its brief, Northwestern contends this Court should address the issue of the duty of Northwestern to defend Phalen in the action brought by Vo. Northwestern claims that because of its position that no coverage applies, there is no duty to defend Phalen under the policy under Reliance Insurance Company v. Fischer (1974), 164 Mont. 278, 531 P.2d 193.

In Reliance, we stated that there was no obligation on the part of the insurance company to undertake the defense of the insured, if under the policy, the insurance company had no duty

-14-

to pay any judgment secured against the insured. In this case, the duty of Northwestern to pay a judgment on behalf of Phalen may not be determined until the original action has been completed. In the meantime, the pleadings themselves, particularly count II, stated a cause which fits within the policy coverage and in that situation, Northwestern has a duty to extend a defense of Vo's action to Phalen. St. Paul Fire and Marine Insurance Company v. Thompson (1967), 150 Mont. 182, 433 P.2d 795.

Phalen's plea of guilty to felony assault is not conclusive either as to his policy coverage or the duty of Northwestern to defend him in a tort action. Teitelbaum Furs, Inc. v. Dominion Insurance Company (1962), 25 Cal. Rptr. 559, 375 P.2d 439, 441; Brohawn v. Transamerica Insurance Company (Md. 1975), 347 A.2d 842, 848. The proper case for determining whether Phalen intended or expected the injuries Vo received is in the tort action, and not in the declaratory judgment action. (Brohawn, 347 A.2d at 848, 849.)

Moreover, the duty to provide a defense is not affected by Phalen's showing little interest in either the tort action or the declaratory judgment suit. This court held in McLane v. Farmers Insurance Exchange (1967), 150 Mont. 116, 432 P.2d 98, that the injured party's rights as a claimant vested at the time of the accident and could not be affected by nondefense of an action brought by the insurer to rescind the insurance policy. Here, Vo's rights can not be affected by the action or nonaction of persons over whom Vo has no control. See Peterson v. Western Casualty and Surety Company (Utah 1967), 425 P.2d 769.

DISPOSITION

The applicability of Northwestern's coverage cannot be determined until the factual issues concerning the intention and expectation of Phalen as to Vo's injuries is decided in the tort action. Therefore, summary judgment in favor of Northwestern in the declaratory judgment case at bar was

-15-

improper. Kemmer v. City of Bozeman (1971), 158 Mont. 354, 492 P.2d 211; Duchesneau v. Silver Bow County (1971), 158 Mont. 369, 492 P.2d 926.

Reversed and remanded to the District Court with instructions to dismiss the declaratory judgment action.

_____
                Justice

We Concur:

_____
            Chief Justice

_____

_____

_____
Justices

-16-