No. 84-21

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

UNITED STATES FIDELITY AND GUARANTY
COMPANY, a Maryland corporation,

Plaintiff, Respondent and Cross-Appellant,

-vs-

RAE VOLUNTEER FIRE COMPANY,

Defendant and Appellant,

and

FARMERS UNION MUTUAL INSURANCE
COMPANY, HARRY PETROFF and ROSSALIE
A. PETROFF, husband and wife,

Intervenors and Appellants.

APPEAL FROM: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Joseph B. Gary, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

William E. O'Leary; O'Leary & McCarthy, Helena,
Montana (Rae Volunteer Fire Co.)
Graybill, Ostrem, Warner & Crotty; Gregory Warner,
Great Falls, Montana (Farmers Union Mutual Ins.)

For Respondent:

Gough, Shanahan, Johnson & Waterman; Daniel C.
Murphy, Helena, Montana

Submitted on Briefs: May 17, 1984

Decided: October 9, 1984

Filed: OCT 9 1984

*Ethel M. Harrison*
—————————————————————————
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

United States Fidelity and Guaranty Company (USF&G) sought a declaratory judgment in the Gallatin County District Court as to its obligations under a liability insurance policy issued by USF&G to Rae Volunteer Fire Company (Rae), a nonprofit corporation. Rae halted firefighting efforts upon determining that Harry Petroff and Rosalie Petroff (Petroffs), residential dwelling owners, were not members of Rae, and the Petroff home burned to the ground. The District Court held that the decision to cease firefighting was not an occurrence or an accident within the meaning of the policy, because the resulting property damage was expected, and that there was no policy coverage. Farmers Union Mutual Insurance Company, insurer of the Petroff home, has intervened. We affirm the District Court.

The issues are:

1. Does the USF&G policy provide Rae with coverage as to the damages claimed by Farmers Union and Petroffs?

2. Did the District Court err in finding the policy exclusionary language unambiguous where the policy fails to specify the individual or individuals in the corporation who may activate the exclusion?

3. Does USF&G have a duty to defend Rae in the action commenced against Rae by Farmers Union and Petroffs?

USF&G commenced this declaratory judgment action to determine the extent of its obligations and liabilities under the liability insurance policy issued to Rae. An extensive agreed statement of facts was submitted by the parties. USF&G and Rae then both moved for summary judgment. The District Court entered summary judgment for USF&G, holding that USF&G was neither obligated to provide liability coverage nor to defend Rae.

2

The critical facts as summarized in this opinion are undisputed. Rae is a nonprofit corporation established to provide rural firefighting protection to its subscribers. Subscribers are charged an initiation fee and annual assessment dues. USF&G issued to Rae a standard form manufacturers' and contractors' liability insurance policy.

On February 24, 1979 several Rae firefighters were advised by the Gallatin County Sheriff's office that a fire was burning at the Petroff home in Gallatin County. Four Rae volunteer firemen responded. The fire could be seen from approximately 1/2 mile away. Flames were shooting through the roof around the chimney as high as 15 or 20 feet in the air before arrival of the Rae firefighting equipment. All four Rae firefighters considered the fire to be fully involved, that is, it had sought its own source of oxygen, which would have prevented Rae from saving the structure with the supply of water available. The Rae firefighters considered the fire out of control upon arrival and at all times while they participated.

Upon arrival at the scene, firefighter Frank Trunk activated the water pump on the fire truck, two others commenced fighting the blaze with separate hoses, and the fourth firefighter, Rick Jensen, questioned Harry Petroff about the possibility of persons being endangered by the fire. Petroff stated there was no one in the house. The firefighter further inquired and was told that the Petroffs were not subscribing members of Rae. Jensen double-checked that information by radio with Rae's secretary. Upon being advised that the Petroff's were not Rae members, Frank Trunk, as fire company chairman, ordered the firefighters to cease all firefighting efforts. The entire firefighting effort by Rae took an estimated 2 to 5 minutes after arrival at the

3

scene. The fire continued burning out of control and destroyed the house.

Approximately one year before the Petroff fire, the board of directors of Rae adopted a policy which required personnel to respond to all fire calls in the service area to determine whether a life-endangering situation existed. If no life was endangered by fire, and if the owners of the structure were not members of the company, Rae would not fight the fire.

Petroffs and Farmers Union filed a complaint against Rae in the Gallatin County District Court seeking damages for destruction of the Petroff home and personal property, and for punitive damages. Rae gave notice of the suit to USF&G, which denied coverage on the basis that the allegations of the complaint and the incidents on February 24, 1979 did not constitute an "occurrence" as defined in the policy.

The District Court's findings of fact quoted the applicable portions of the policy, about which there is no disagreement:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of . . . property damage to which this insurance applies, caused by an occurrence . . ."

The insurance policy defined the word "occurrence" as follows:

> "'Occurrence' means an accident, including continuous or repeated exposure to conditions, which results in . . . property damage neither expected nor intended from the standpoint of the Insured."

In its conclusions of law, the District Court held that the issue between Rae and USF&G is one of contract language; that the language cannot be interpreted to cover a deliberate act by Rae the results of which were expected by its officers and agents; that the decision to cease firefighting was not

4

an "occurrence" or an "accident" because the resulting property damage was expected from the standpoint of the insured; that USF&G does not provide insurance coverage for Rae under these circumstances; and that USF&G has no duty to defend since there is no liability under the policy. The District Court further held that the policy language is unambiguous because the fire company can have an expectation of property damage through its duly authorized officers and agents.

## I

Does the USF&G policy provide Rae with coverage as to the damages claimed by Farmers Union and Petroffs?

Rae contends that Montana case law was not properly interpreted by the District Court. Rae contends that the court erred in holding, in effect, that Rae was the cause of the fire and that because Rae expected the damage to occur when it stopped fighting the fire, Rae is barred from liability coverage.

In contrast, USF&G argues that the decision of Rae to cease firefighting efforts at the Petroff residence was intentional and that the resulting destruction of the Petroff home was expected from the standpoint of the insured. USF&G argues there is no insurance coverage under these facts.

The deposition of Mr. Trunk, chairman of the board of directors of Rae, establishes that he expected at the time the firefighting efforts were terminated that the house would burn to the ground. Mr. Gilbertson and Mr. Jensen, Rae's fire chief and assistant fire chief, testified that at the time the decision was made to stop the firefighting efforts, each of them expected that the house would be destroyed. This testimony is consistent with the findings of fact and agreed statement of facts to the effect that the fire

5

continued burning out of control and destroyed the Petroff residence.

Under these facts the policy definition of "occurrence" was not met. Such an "occurrence" must have resulted in property damage "neither expected nor intended from the standpoint of the Insured." While there may be some argument as to intent in this case, there can be no argument as to "expected." It is clear that the chairman of the board, fire chief and assistant fire chief all expected that the house would continue to burn and be destroyed. That affords a clearly sufficient factual basis for the District Court's conclusion of law that the decision to cease firefighting was not an "occurrence" or an "accident" because the resulting property damage was expected by Rae.

In Northwestern National Casualty Co. v. Phalen (1979), 182 Mont. 448, 459, 597 P.2d 720, 726, we construed a similar policy provision as follows:

"After examination of the cases, and the exclusion itself, we would interpret the clause to mean that it precludes coverage for . . . damages, though not specifically intended by the insured, if the resulting harm was within the expectation or intention of the insured from his standpoint. That statement more precisely fits the language of the coverage provided by the insurer."

That is directly applicable here where the destruction of the dwelling was the resulting harm expected by the insured.

Rae cites Miller's Mutual Insurance Co. v. Strainer (Mont. 1983), 663 P.2d 338, 40 St.Rep. 743, as authority for its position. In that case we concluded that in removing a filter from a gas mask, the defendant had committed an intentional act, but that in doing so he had neither intended nor expected the act's consequences, serious injury to a co-employee. Here Rae, through its employees, clearly expected the destruction of the dwelling. This is a factual

6

distinction between Miller's Mutual Insurance Co. and this case.

We affirm the holding of the District Court that the USF&G policy did not provide coverage for the fire of February 24, 1979 or the damages claimed by the Petroffs and Farmers Union.

## II

Did the District Court err in finding the policy exclusionary language unambiguous where the policy fails to specify the individual or individuals in the corporation who may activate the exclusion?

We agree with the numerous Montana cases cited by Rae holding that where an ambiguity in an insurance contract exists, every doubt should be resolved in favor of the insured and strictly construed against the insurer. However, those cases are not controlling because Rae fails to show how the policy provisions are ambiguous in the present fact situation.

In substance, Rae contends that because the policy language fails to identify the individual in the Rae corporation who may activate the provision with regard to the expectations or intention of the corporation, there is an ambiguity. That contention ignores the principle that a corporation acts through its duly authorized officers and agents. Fisk Tire Co. v. Lanstrum (1934), 96 Mont. 279, 282, 30 P.2d 84, 85. Further, the uncontradicted findings of fact establish that Rae made a corporate decision through its board of directors to terminate firefighting activities under the fact situation which existed in the present case. The on-the-scene decision to stop firefighting efforts was made by the chairman of the board of directors after carefully checking to determine that the facts came within the purview

7

of the decision previously made by the board of directors. We affirm the conclusion by the District Court that the chairman of the board of directors had authority under the circumstances to act for the corporation. See Hauptman v. Edwards, Inc. (1976), 170 Mont. 310, 553 P.2d 975; Bentall v. Koenig Bros. Inc. (1962), 140 Mont. 339, 372 P.2d 91.

We affirm the conclusion by the District Court that the language of the policy is not ambiguous because Rae can have an "expectation" of property damage through its duly authorized officers.

III

Does USF&G have a duty to defend Rae in the action commenced against Rae by Farmers Union and Petroffs?

In substance Rae argues that under the allegations of the complaint by the Petroffs and Farmers Union, USF&G should be required to defend the action regardless of whether the actions of Rae actually caused the damage to the Petroff residence. In making that argument, Rae relies particularly upon our holding in Lindsay Drilling and Contracting v. United States Fidelity and Guaranty Co. (Mont. 1984), 676 P.2d 203, 41 St.Rep. 193. It is true that in Lindsay this Court concluded that USF&G was obligated to defend under its policy, leaving for future determination by the jury whether the operations being performed by or on behalf of the insured at the time of injury were in fact negligent. In a similar manner, Rae argues that regardless of the facts, the allegations of the Petroff complaint are sufficient to require defense by USF&G.

This argument disregards the undisputed facts contained in the agreed statement of facts and restated in the District Court's findings of fact. These facts establish that there is no coverage under the USF&G policy because the fire damage

8

to the Petroff home was expected by Rae and, as a result, the decision to cease firefighting was not an "occurrence" as defined in the policy. This distinguishes Lindsay, in which the facts had not yet been determined by a trier of fact.

We affirm the conclusion of the District Court that USF&G has no duty to defend where there is no liability under the policy provisions.

We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____
Justices

9