No. 88-200

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

DANIEL S. BURNS,

Plaintiff and Appellant,

-vs-

UNDERWRITERS ADJUSTING COMPANY,
an Illinois corporation, and
CONTINENTAL INSURANCE COMPANY,
a New Hampshire corporation,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Calvin J. Stacey; Keefer, Roybal, Hanson & Stacey,
Billings, Montana

For Respondent:

Herbert I. Pierce, III; Crowley, Haughey, Hanson,
Toole & Dietrich, Billings, Montana

Submitted on Briefs: Aug. 4, 1988

Decided: November 17, 1988

Filed:

_Robert M. Harrison_
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Appellant Burns appeals from the order of the District Court of the Thirteenth Judicial District granting summary judgment to respondents Underwriters Adjusting Company and Continental Insurance Company (Underwriters and Continental). We affirm.

The issue is whether Underwriters and Continental may be sued for counts based on their failure to defend their insured, Troy Zeiler. Burns sued Zeiler alleging that Zeiler negligently struck Burns. Underwriters and Continental refused to defend the suit because their investigation revealed that the policy excluded coverage for the injury inflicted on Burns by Zeiler.

The facts revealed to Underwriters and Contintental prior to the suit against Zeiler were recorded by the lower court as follows:

> That on or about June 24, 1985, the Defendants received notice of the Burns claim and undertook an investigation, including obtaining a recorded statement from the insured, Troy Zeiler, which led the adjuster to believe that the actions of Troy Zeiler were not in self-defense but were intentional; on December 4, 1985, Underwriters Adjusting Company sent a Reservation of Rights letter to Zeiler advising him that serious questions existed as to the coverage; on January 13, 1986, Underwriters Adjusting Company learned that the insured, Troy Zeiler, pled guilty to felony aggravated assault criminal charge, arising out of the same incident; that his sentence was deferred for six years conditioned upon his paying $5,554.00 for the victim's medical expenses; on February 4 and February 11, additional Reservation of Rights letters were sent to the insured advising that there was no coverage for the acts of the insured;  ...

Facts in the record also reveal that prior to the filing of the cause at issue here, Underwriters and Consolidated informed Burns's attorney that no coverage existed. Burns filed the claim for Zeiler's "negligence" on March 12, 1986. Zeiler did not defend the suit, and the District Court entered judgment for Burns. Zeiler then assigned his claims against Underwriters and Continental to Burns, and Burns, now assuming Zeiler's rights as an insured, initiated the law suit at issue. The policy covering Zeiler excluded from coverage:

> bodily injury or property damage that is expected or intended by a Covered Person except for bodily injury or property damage that results from the reasonable use of force to protect people or property.

The facts showed that Zeiler intentionally struck Burns, and that Zeiler could not claim self defense.

The District Court concluded that Underwriters and Consolidated had no duty to defend or indemnify Zeiler. To support its decision, the lower court cited Mutual Service Casualty Ins. Co. v. McGehee (Mont. 1985), 711 P.2d 826, 42 St.Rep. 2038 (no duty to indemnify under similar facts and almost identical policy language), and United States Fidelity & Guaranty Co. v. Rae (Mont. 1984), 688 P.2d 1246, 41 St.Rep. 1857 (if insurer has no duty to indemnify the insured, there is no duty to defend). We agree with the District Court that no material facts exist as to the duty to indemnify. The undisputed facts undeniably show that Zeiler intentionally struck Burns without justification. We also agree with the lower court that McGehee controls and mandates the conclusion that there was no duty to defend.

Burns argues, however, that the lower court should have applied Northwestern National Casualty Company v. Phalen

(1979), 182 Mont. 448, 597 P.2d 720, and similar cases holding that where the pleadings allege a cause which fits within policy coverage, a duty to defend arises. In particular, Burns argues that because his complaint alleges negligence, and because the policy covers negligence, Underwriters and Continental had a duty to defend. We disagree.

We hold here that Phalen does not cover every factual situation arising from an insurance company's alleged failure to defend. As argued by respondents, the proper focus of inquiry is the acts giving rise to coverage, not the language of the complaint. See 14 G. Couch, Couch on Insurance 2d § 51:50 (rev. ed. 1982). The cases relied on by Burns are distinguishable from the present case in that the facts supporting the allegations in the pleadings arguably gave rise to coverage. See, e.g., Phalen, 597 P.2d at 726. The facts established in this case clearly showed that the policy excluded coverage for the injury suffered by Burns. Thus, Rae controls over Phalen because Burns has been unable to come forward with facts demonstrating that coverage arguably existed. Rae, 688 P.2d at 1251.

In regard to Burns's argument that the duty to defend was established prior to the initiation of this action, this Court takes the opportunity to make the following observation. Rule 11, M.R.Civ.P., requires that pleadings meet the following requirements: they must be formed after reasonable inquiry; they must be warranted by existing law or a good faith argument for an extension, modification, or reversal of existing law; and they must not be interposed for any improper purpose. The rule that insurers may be required to defend suits based on allegations in pleadings must be read with the requirements of Rule 11. As stated by the Supreme Court of Minnesota in a similar duty to defend suit:

4

> To hold otherwise is to invite undercover deals, lack of candor, and manipulation of the tort pleadings as a device for involving an insurer who could not otherwise be involved.

F. & M. State Bank v. St. Paul Fire & Marine (Minn. 1976), 242 N.W.2d 840, 844 n. 7. We refuse to find the creation of the duty on the basis of the pleadings made in this case.

Affirmed.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____

_____

_____
        Justices

Mr. Justice John C. Sheehy, dissenting:


In a properly pleaded case, a trial court could have concluded that under the facts, the injuries inflicted by Zeiler against Burns were intentional and that therefore the policy of insurance under which Zeiler was covered did not apply, because it did not cover intentional acts. The difficulty with that concept in this case is that the insurer, when Zeiler was sued by Burns, unilaterally decided that it did not have to defend Zeiler. The insurance company made that decision in the face of the fact that the action against Zeiler alleged that Zeiler had <u>negligently</u> inflicted injuries upon Burns. Zeiler made demand upon the insurer to defend him in the action brought by Burns, and the insurer refused to tender a defense. The result was that a default judgment was entered against Zeiler on grounds that he had <u>negligently</u> inflicted personal injuries upon Burns. Negligent injuries caused by Zeiler are covered under the policy.

The duty of an insurance company to defend its insured is determined by the allegations of the complaint and the language of the insurance policy. We said in Atcheson v. Safeco Insurance Co. (1974), 165 Mont. 239, 527 P.2d 549, 552:

> It is to the allegations of the Alaskan complaint that we look to determine whether or not there is a duty to defend. The appellant has a duty to defend where the complaint sets forth facts which are a part of the covered risk. The rule on the duty to defend is set forth in 50 A.L.R.2d 506-7:
>
> "Where a complaint alleges facts which represent a risk outside the coverage of the policy but also avers facts which, if proved, represent a risk covered, the insurer is under a duty to defend . . ."

- 6 -

In McAlear v. St. Paul Ins. Cos. (1972), 158 Mont. 452, 493 P.2d 331, we held again that the allegations of the complaint determined whether the insurer is required to defend the action brought against the insured. In McAlear, however, the policy excluded from coverage injury to or destruction of tangible property, and the complaint in McAlear's case alleged injury to personal property which was outside the coverage. Because the allegations of the complaint were not sufficient to bring the complaint within the insurance coverage, we agreed that the insurer had no duty to defend. That case, however, should not be stretched, nor those following it, to indicate that an insurer may make a unilateral decision not to defend when the allegations of the complaint against the insured, taken as a whole, are fully within the coverage provided by the insurer.

When a complaint filed against a putative insured contains allegations which, if sustained, would be within the coverage, even though the company may have extrinsic evidence that such is not the case, it does not have the right to refuse to defend the putative insured at that point. Its duty is to act as set forth in Aetna Casualty and Surety Company v. Coronet Insurance Company (Ill. App. 1976), 358 N.E.2d 914, 917:

> . . . As shown by these cases, in Illinois, the insurer is obligated to defend an action brought against a putative insured where the complaint in that action sets forth a situation which would potentially be covered by the policy. Unless the complaint alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend. Underlying this rule is the principle that the duty to defend is broader than the duty to pay. If in a case there is a potential coverage but the insurer believes that the insurer has a valid exclusionary coverage defense then the insurer must: (1) secure a declaratory judgment of its rights

- 7 -

while defending the potential insured under a reservation of rights, or (2) defend the potential insured under a reservation of rights and adjudicate its coverage in a supplemental suit. (Citing authority.) In such a case, where the insurer fails to take either course of action, its failure to defend is unjustified and in a subsequent action by the insured against the insurer, _it will be estopped from raising exclusionary defenses_. (Emphasis added.)

Our prior case of Mutual Service Cas. Ins. Co. v. McGehee (Mont. 1985), 711 P.2d 826, 42 St.Rep. 2038, is not applicable in this case. Mutual Service Casualty had at least taken the proper steps of seeking a declaratory judgment as to its duty to defend. Here, Underwriters Adjusting Company and Continental Insurance Company took no such steps. The result is that this Court is in the anomalous position of holding that the insurer had no duty to defend, when a default judgment has been entered against its putative insured, based on negligence.

In U.S. Fidelity and Guaranty Co. v. Rae Volunteer Fire Company (Mont. 1984), 688 P.2d 1246, 41 St.Rep. 1857, the insurer also properly proceeded by seeking a declaratory judgment as to its obligations under the liability insurance policy it had issued.

In like manner, in Reliance Ins. Co. v. Fisher and Poeppel (1974), 164 Mont. 278, 521 P.2d 193, the insurer brought a declaratory judgment action, where it was held that if the insurer would have no obligation to indemnify the insured then it had no contractual obligation to afford a defense.

The point of these cases is that an insurer, if it has a valid exclusionary defense based on its policy provisions, but the allegations of the complaint against its putative insured include potential liability, the insurer, to protect

itself, must proceed to seek a declaratory judgment or otherwise begin a supplemental suit to determine the issue of coverage before judgment is entered against its putative insured, and to proceed under reservation of rights.

Our holding in Northwestern National Casualty Co. v. Phalen (1979), 182 Mont. 448, 597 P.2d 720, is entirely outside the issues involved in this case. In Phalen, the insurer properly brought a declaratory judgment to determine whether it owed the defendant coverage under its policy of insurance. The holding in Phalen was that there was a substantial issue as to the intention of the insured at the time of the incident involved, and until that was determined as a matter of fact, the insurer had a duty to not only defend the action, but to cover the liability if the trier of the fact brought the incident within the policy coverage. That is not the situation facing us in this case. Here the insurer did nothing, although demand was made upon it to defend its insured in an action where the complaint stated facts potentially within coverage. The decision of the majority in this case takes Montana out of the mainstream of American decisions on this point, that where the complaint alleges facts potentially within the coverage, the duty of the insured is to defend, and that if it feels its policy does not apply, it must bring a separate or supplemental action to determine the issue of coverage.

As to the veiled threat of imposing sanctions under Rule 11 against the plaintiff's attorney in this case, that is unnecessary and entirely uncalled for. The plaintiff's attorney was entitled to rely on the commonly accepted rule of law that the failure of the liability insurer to defend a suit against his insured would estop it from asserting any defense as to payment based on noncoverage. It was said in

Sims v. Illinois National Casualty Co. (Ill. App. 1963), 193 N.E.2d 123, 126:

> "An insurer's duty to defend an action against the insured is measured, in the first instance, by the allegations in the plaintiff's pleadings, and if such pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend, irrespective of the insured's ultimate liability to the plaintiff."

> Thus, according to the foregoing, the generally recognized doctrine is that the insurer is under a duty to defend the suit against an insured where the petition or complaint in such suit alleges a state of facts within the coverage of the policy. And while there is some conflict of authority, the majority of decisions of the courts which have passed on the question adhere to the general rule even though the insurer's investigation discloses a conflict between the allegations of the complaint and the actual facts as known to or ascertainable by the insurer.

Again, on page 129:

> Thus, while the statement of the general rule in Am.Jur.2nd Automobile Insurance Sec. 167, supra, and the language of the court in the Rom case may at first blush appear to be confusing, what is really meant is that the insurer has no right to insist that the insured be bound by the provisions of the insurance contract inuring to its benefit, i.e., the "Exclusions" provisions, when it has already breached the contract by violating the provision inuring to the benefit of the insured, i.e., the defense provisions. In this sense, it may properly be said to be estopped.

Under the complaint against Zeiler, the insurer had a clear duty to defend Zeiler in the case. If it had an exclusionary defense, it had a further clear duty to proceed either under a reservation of rights or to seek a declaratory judgment or a supplemental decision that no insurance coverage was involved. This, Underwriters failed completely

to do. It made the decision, instead of a court, as to whether its policy applied. In that situation, it is collaterally estopped.

The reference of the majority to Rule 11, and its application in cases where the insurer has a duty to defend, is particularly inappropriate. The proper place, in fact the only place, for a determination of a Rule 11 sanction is in the original action where it is contended that the attorney violated Rule 11. In this case, the proper place for application of Rule 11 was in the original action, the action in which the insurer deigned not to appear. Moreover, the remedy for a violation under which Rule 11 is applicable is an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney fee. Taking away a party's cause of action is not a remedy contemplated by Rule 11. The resort of the majority to Rule 11 in this case so as to justify a result contrary to all the decided cases shows little understanding of how and when Rule 11 is to be applied.

_____
                    Justice

Mr. Justice William E. Hunt, Sr.:

I concur in the dissent of Mr. Justice Sheehy.

_____
                    Justices

- 11 -