**Elbert F. SCOUTEN, Mary Jane Scouten, and Holly A. Scouten, Plaintiffs,**

**v.**

**The HORACE MANN INSURANCE COMPANY, Defendant.**

**No. CV–89–64–M–CCL.**

United States District Court,
D. Montana,
Missoula Division.

Jan. 28, 1991.

---

**11.** *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**12.** 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Thomas R. Bostock, Warden, Christiansen, Johnson & Berg, Kalispell, Mont., for plaintiffs.

Kim L. Ritter, Milodragovich, Dale & Dye, Missoula, Mont., for defendant.

## MEMORANDUM OF DECISION AND ORDER

PREGERSON, Circuit Judge, sitting by designation.

On December 18, 1990, this matter, which involves an insurance coverage dispute, came before the Court on cross-motions for summary judgment. The plaintiffs were represented by their counsel, Thomas R. Bostock of Warden, Christiansen, Johnson, & Bird, of Kalispell, Montana. Defendant, Horace Mann Insurance Company, was represented by its counsel, Kim L. Ritter, of Milodragovich, Dale, & Dye, of Missoula, Montana.

The parties agree that there are no disputed fact questions and that legal issues concerning the extent of underinsurance coverage are ripe for decision. The parties also agree that Montana law governs.

Briefly stated, the facts are: Plaintiffs Elbert F. Scouten and Mary Jane Scouten, parents of Holly A. Scouten, purchased five auto insurance policies on five separate vehicles from Horace Mann. Each policy provided for $25,000 of underinsured motorist coverage. Horace Mann concedes that the policies provide cumulative coverage of $125,000.

On May 22, 1987, Holly A. Scouten, a minor, sustained serious bodily injuries because of an automobile accident. Her medical bills exceed $220,000. The carrier that insured the tortfeasor responsible for Holly's injuries paid Holly $100,000, the liability limits of its policy. The reasonable value of Holly's personal injury damage claim against the underinsured tortfeasor exceeds $225,000.

Although Horace Mann concedes that its policies extend cumulative benefits of $125,000 for underinsurance coverage, it argues that it is entitled to offset the $125,000 coverage by the $100,000 paid to Holly by the tortfeasor's carrier, thus limiting

Horace Mann's exposure resulting from the May 22 accident to $25,000. Plaintiff argues that under the provisions of the Horace Mann policy and governing Montana law she is entitled to recover the full amount of Horace Mann's $125,000 cumulative coverage—without any offset—because her compensable personal injuries exceed $225,000.

The underinsurance policy provisions at the heart of this dispute are contained at pages 17 and 18 of the Horace Mann policy. The underinsurance provisions state:

We [Horace Mann] will pay damages for bodily injury an insured [Holly A. Scouten] is legally entitled to collect from the owner or driver of an underinsured motor vehicle.

The policy then states:

THERE IS NO COVERAGE UNTIL THE INSURED'S DAMAGES EXCEED THE LIMITS OF LIABILITY OF ALL BODILY INJURY LIABILITY INSURANCE POLICIES OR BONDS APPLICABLE TO THE ACCIDENT AND THOSE LIMITS HAVE BEEN USED UP BY PAYMENTS, JUDGMENTS OR SETTLEMENTS.

At page 18 of the Horace Mann policy, an underinsured vehicle is defined as:

[A] Motor vehicle, the ownership, maintenance, or use of which is insured for bodily injury and property damage liability, but the sum of the limits of liability of such insurance is less than the limits of liability of the coverage under this policy....

Under the provision of the Horace Mann policy that defines an "underinsured vehicle" the underinsurance provision arguably would not kick-in unless the tortfeasor's policy limits were less than the injured party's underinsurance coverage. This means that if the five policies, each with $25,000 coverage, are considered separately, there would be no underinsurance coverage that would apply, but that if the policies were considered cumulatively—i.e., in the parlance of the industry "stacked" there would be $25,000 of underinsurance coverage. ($125,000 minus $100,000 tort-

feasor coverage.) This reading of the policy would defeat the insured's reasonable expectations derived from the underinsurance provisions quoted above. Under those provisions, Holly should be entitled to receive from Horace Mann—to the extent of its policies' cumulative limits—the difference between the $100,000 received from the tortfeasor's carrier and a sum reasonably necessary to compensate her for her bodily injuries, which sum concededly exceeds $225,000. Under Montana law courts recognize the reasonable expectations of an insured regarding scope of coverage. *Transamerica Ins. Co. v. Royle,* 202 Mont. 173, 180–181, 656 P.2d 820, 824 (1983).

Moreover, a reading of the two provisions of the Horace Mann policy—the underinsurance provision and the underinsured vehicle definition—causes one to be struck by the conflicting and ambiguous results those provisions produce concerning the extent of underinsurance coverage in the Horace Mann policies.

Under Montana law, such conflicts and ambiguities are resolved in favor of the insured. *United States Fidelity and Guar. Co. v. Rae Volunteer Fire Co.,* 212 Mont. 450, 456, 688 P.2d 1246, 1250 (1984).

This is precisely the result reached by Judge Lovell in *Transamerica Ins. Group v. Osborn,* 627 F.Supp. 1405 (D.Mont.1986). The definition of underinsured vehicle found in the Horace Mann policy is basically the same as the definition found in the *Transamerica* policy.

Judge Lovell ruled that a limiting definition of underinsured vehicle in the *Transamerica* policy ran against the public policy of Montana because its language could be read to deny the insured his reasonable expectation that he had underinsured coverage once it was determined that his recoverable damages for bodily injury exceeded the liability limits of the tortfeasor's policy.

Holly's position is further supported by a Montana Supreme Court case, decided on May 24, 1990, in which plaintiff's claims for underinsurance coverage were upheld.

In *State Farm Mutual Automobile Insurance Company v. Braun,* 243 Mont. 125, 793 P.2d 253 (1990) the Court stated:

The purpose of underinsured motorist insurance is to provide a source of indemnification for accident victims when the tort-feasor does not provide adequate indemnification. Coverage under the terms of the policy at issue here should be predicated on an insured's damages excluding the indemnification *actually available* from the tortfeasor's liability insurance.

793 P.2d at 256. The policy at issue in the *State Farm* case defines underinsurance coverage and underinsured vehicle in language that is substantially similar to the related provisions in the Horace Mann policy.

Despite the Montana Supreme Court's strong pronouncement of public policy supporting a liberal construction of underinsured provisions to favor coverage, Horace Mann relies heavily on the Ninth Circuit's decision in *Farmers Alliance Mutual Insurance Company v. Miller,* 869 F.2d 509 (9th Cir.1989) (interpreting Montana law). *Farmers* is clearly distinguishable from the case at bar. In *Farmers,* the policy provided for uninsured and underinsured motorist coverage of up to $50,000 where the tortfeasor had no liability insurance at all or coverage less than $50,000. *Farmers* held that such a limiting provision placed a $50,000 "cap" on damage recovery from all sources. But Horace Mann's policy provides no such "cap." In addition, the applicable provision in the Farmers' policy was found to be clear and unambiguous. Such is not the case with Horace Mann's offset clause. Finally, the above-quoted words of the Montana Supreme Court in *State Farm* indicate Montana's strong public policy in favor of underinsurance coverage. Such a policy requires a liberal construction of underinsurance provisions, not the narrow construction followed in *Farmers.*

One should also bear in mind that it is the Montana Supreme Court's construction of Montana law and its pronouncement of public policy that controls. *See Fidelity*

*Trust Co. v. Field,* 311 U.S. 169, 177, 61 S.Ct. 176, 178, 85 L.Ed. 109 (1940); *Olympic Sports Products, Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910, 913 (9th Cir.1985). Moreover, the Montana Supreme Court decided *State Farm* the year after we interpreted Montana law in *Farmers.* If there is any conflict between the two decisions, the later decision of the Montana Supreme Court controls.

Accordingly, this Court grants plaintiffs' motion for summary judgment and holds that the underinsurance provision of the Horace Mann policy requires the carrier to extend the full $125,000 of coverage to indemnify Holly A. Scouten for damages resulting from personal injuries she sustained in the accident of May 22, 1987. Amounts paid to her by the tortfeasor's carrier may not be used to offset the $125,-000 coverage.

Summary judgment in favor of plaintiffs shall be entered accordingly.

The Clerk of Court is directed to serve copies of this Memorandum of Decision and Order upon the attorneys of record for the parties appearing herein.